———o———

## STEVENS v. THE STATE.

CRIMINAL LAW.—*Insanity.*—Where a person is moved to the commission of an unlawful act by an insane impulse controlling his will and his judgment, he is not guilty of a crime; and if he is a monomaniac on any subject, it is wholly immaterial upon what subject, so that the insane impulse leads to the commission of the act.

SAME.—*Knowledge of Right and Wrong.*—On the trial of an indictment for murder in the first degree, the court instructed the jury, that if they believed from the evidence "that the defendant knew the difference between right and wrong in respect to the act in question, if he was conscious that such act was one which he ought not to do, and if that act was at the same time contrary to the law of the State, then he is responsible for his acts."

*Held,* that this is not law.

SAME.—So far as a person acts under the influence of mental disease he is not criminally accountable; and the jury in a criminal case must be satisfied beyond a reasonable doubt of the defendant's mental capacity to commit the crime charged.

APPEAL from the Vigo Criminal Circuit Court.

GREGORY, J.—The appellant was indicted in the court below for murder in the first degree. He pleaded "not guilty," and was tried by jury; verdict guilty, affixing the death penalty.

The defense was insanity. The evidence as to insanity was slight, but sufficient to carry the question to the jury. The motion for a new trial was based upon alleged errors of law occurring at the trial, in the instructions of the court to the jury.

At the instance of the prosecuting attorney, the court instructed the jury, that, "in order to excuse a man for killing another on the ground of insanity, it must appear to the satisfaction of the jury, that he was either absolutely insane at the time of the act, so that he did not know the difference between right and wrong; or that he was laboring under some form of monomania by which he was irresistibly impelled, by an uncontrollable will, to the perpetration of the act; *but such monomania must be in relation to the act of killing, for if it is monomania upon some other subject, it does not excuse a killing.*

"If a man becomes a monomaniac on account of the morbid state of his domestic affections, or if he becomes so on account of the morbid state of his religious feelings, in either case his moral sense is only affected by the cause of his disease; that is, he is only excused from the commission of crime so far as he acts under the irresistible influence of the particular monomania under which he is laboring; *and if, although laboring under either of said forms of monomania, he shall kill a man with premeditation, malice, and purpose, he would be without excuse, and would be guilty of murder in the first degree.*

"In order to excuse a man for the commission of a crime,

on the ground of monomania, *it must appear that the mono-mania had relation to the particular crime committed; and if it was monomania upon any other subject, it would be no excuse.*

"When a man kills another *without having given any previous indications of insanity,* and afterwards so acts as to appear to be insane, the jury should consider this fact, to determine whether insanity is not simulated, or pretended, and if they find that it was pretended, it should not weigh anything in their decision of the question of guilt or innocence."

It is claimed that the parts of these instructions italicized are erroneous.

At the request of the defendant, the jury were instructed, that "if they believed from the evidence that when the prisoner committed the act charged in the indictment he was laboring under any irresistible and uncontrollable mental delusion, impelling him to do said act; that he was at the time of the perpetration of said killing in such a state of mind as to be unable to control his will and his actions in regard to the act so committed; then, in judgment of law, he was insane, and could not be guilty of the offense of murder charged in the indictment; and he is consequently entitled to a verdict of not guilty.

"If the jury believe from the evidence that, at the time of committing the act charged in the indictment, the prisoner was moved thereto by an insane impulse, controlling his will and his judgment, an impulse too powerful for him to resist; and said insane impulse arose from causes physical or moral, or from both combined, not voluntarily induced by himself; under such circumstances the jury cannot find the defendant guilty as charged."

The defendant asked, at the proper time, the following instruction: that "if the jury entertain a reasonable doubt as to the soundness of the mind of the prisoner at the time of the commission of the homicide charged, he is entitled to the benefit of that doubt, as he would be to the benefit of a doubt as to any other material fact in the case; it being,

under the statute of this State, a necessary ingredient of the offense, that the person charged shall at the time of the commission of the offense be of sound mind; and if the evidence shows that the prisoner, at the time of the commission of the act, was not of such sound mind, although the jury may believe he had judgment and reason sufficient to discriminate between right and wrong in the ordinary affairs of life, even at the time of the commission of the offense, they cannot find him guilty." The court refused to give the instruction as asked, but, over the objection of the defendant, gave it with this qualification: "If the jury believe from the evidence that the defendant knew the difference between right and wrong in respect to the act in question; if he was conscious that such act was one which he ought not to do; and if that act was at the same time contrary to the law of the State; then he is responsible for his acts."

It is undoubtedly the law, as charged by the court below, that if the defendant was moved to the act by an insane impulse controlling his will and his judgment, then he was not guilty of the crime charged. And if the defendant was a monomaniac on any subject, it was wholly immaterial upon what subject, so that the insane impulse led to the commission of the act.

It is claimed that the instructions as to this point given by the court at the instance of the State's attorney were calculated to mislead the jury, and two members of this court are of that opinion. It is clear that the instructions might have been put in better form, but I have no doubt that they are correct law as they were intended by the court to be understood, and particularly as explained by the court in the instructions asked by the defendant. But if this case turned upon that question, I should hesitate to determine that a jury might not have been misled by instructions about the meaning of which there is a difference of opinion among the members of this court.

It is claimed that the court erred in the instruction in

reference to simulating insanity after the commission of the act, in assuming that the defendant had given no previous indications of insanity. There was some evidence of previous indications of insanity, but we do not understand the instruction as making any such assumption. The instruction may not have been applicable to the case made, and may have misled the jury.

But we are clear that the court below erred in giving the qualification to the instruction asked by the defendant.

The statute provides, that "if any person of sound mind shall purposely and with premeditated malice, kill any human being, such person shall be deemed guilty of murder in the first degree." 2 G. & H. 435, sec. 2.

The legislature have defined the meaning of the expression, "persons of unsound mind." It is provided that this phrase "shall be taken to mean any idiot, *non compos,* lunatic, monomaniac, or distracted person." 2 G. & H. 573–4, sec. 1.

The great difficulty has been, in cases of partial insanity, to fix the standard of criminal responsibility. The leading case in this country is the *Commonwealth* v. *Rogers,* 7 Met. 500. Chief Justice SHAW, in his charge to the jury in that case, said, "the difficulty lies between these extremes, in the cases of partial insanity, where the mind may be clouded and weakened, but not incapable of remembering, reasoning and judging, or so perverted by insane delusion, as to act under false impressions and influences. In these cases, the rule of law, as we understand it, is this: A man is not to be excused from responsibility, if he has capacity and reason sufficient to enable him to distinguish between right and wrong, as to the particular act he is then doing; a knowledge and consciousness that the act he is doing is wrong and criminal, and will subject him to punishment. In order to be responsible, he must have sufficient power of memory to recollect the relation in which he stands to others, and in which others stand to him; that the act he is doing is contrary to the plain dictates of justice and right,

injurious to others, and a violation of the dictates of duty. On the contrary, although he may be laboring under partial insanity, if he still understands the nature and character of his act, and its consequences; if he has a knowledge that it is wrong and criminal, *and a mental power sufficient to apply that knowledge to his own case,* and to know that, if he does the act, he will do wrong and receive punishment; such partial insanity is not sufficient to exempt him from responsibility from criminal acts."

As we understand this charge, it does not go to the length of fixing the test of "a knowledge of right and wrong;" it recognizes the necessity of a mental power sufficient to apply that knowledge and act accordingly. The charge is by no means clear, and we think that it is not entitled to the weight usually awarded it.

The law was much better put by Judge BREWSTER in *Commonwealth* v. *Haskell* (See 4 Am. Law Rev. 240), thus: "that the true test lies in the word, power. Has the defendant in a criminal case the power to distinguish right from wrong, and the power to adhere to the right and to avoid the wrong? Has the defendant, in addition to the capacities mentioned, the power to govern his mind, his body, and his estate?"

Indeed, there are very strong reasons for holding, that the charge of Chief Justice PERLEY, in the *State* v. *Pike* (See 4 Am. Law Rev. 245–6), is the true law on this subject. He instructed the jury, "that the verdict should be 'not guilty by reason of insanity,' if the killing was the offspring or product of mental disease in the defendant; that neither delusion nor knowledge of right and wrong, nor design or cunning in planning and executing the killing, and escaping or avoiding detection, nor ability to recognise acquaintances, or to labor, or transact business, or manage affairs, is, as a matter of law, a test of mental disease; but that all symptoms and all tests of mental disease are purely matters of fact to be determined by the jury."

The argument that leads strongly to this conclusion is to

be found in the able dissenting opinion of Judge DOE, in *Boardman* v. *Woodman*, 47 N. H. 120 (See p. 146 *et seq.*).

It is not necessary for us to go this length in the case in judgment.

In a criminal case, the jury must be satisfied beyond a reasonable doubt of the defendant's mental capacity to commit the crime charged. This is but an application of the general principle, that the criminal intent must be proved, as well as the act; that without a capable mind, such intent cannot exist, the very element of crime being wanting. Such terms as "criminal intent," "vicious will," and "use of reason," are used in a very broad and general sense, including the idea that the mind must be in such a reasonable condition as to be capable of giving a guilty character to the act. The will does not join with the act, and there is no guilt, when the act is directed or performed by a defective or vitiated understanding. So far as a person acts under the influence of mental disease he is not accountable.

We wish in this case to be understood as simply holding that the qualification of the instruction asked by the defendant was not law, and for this reason the court below ought to have granted a new trial.

Judgment reversed, cause remanded, with directions to grant a new trial, and for further proceedings.

ELLIOTT, J., was absent.

*J. P. Baird, C. Cruft, W. E. McLean,* and *J. 'N. Pierce,* for appellant.

*R. W. Thompson* and *D. E. Williamson,* Attorney General, for the State.