NOELKE v. STATE OF INDIANA.

[No. 27,045. Filed July 7, 1938.]

*Edward Crabtree,* for appellant.

*Omer S. Jackson,* Attorney-General, and *Glenn L. Steckley,* Deputy Attorney-General, for the State.

ROLL, J.—Appellant was prosecuted by a grand jury indictment charging appellant with the crime of murder in the first degree. To this indictment appellant entered

a plea of not guilty, and also filed a plea of insanity. The cause was tried by a jury who returned a verdict on the 10th day of November, 1937, finding the appellant guilty of murder in the first degree as charged in the indictment and that he suffer death.

Appellant's motion for a new trial was overruled, which ruling is the only error assigned on appeal. In order to properly understand the questions presented by appellant's brief we deem it advisable to state briefly the facts as disclosed by the record. An epitome of the confession of appellant which was designated as state exhibit number two and introduced at the trial without objections, cover the salient facts in this case. Appellant was charged with the murder of his eighteen-months-old daughter, Rita Jo Noelke.

Appellant was the husband of Hazel Noelke who was, at the time of the alleged crime, twenty-nine years of age and Rita Jo Noelke was the eighteen-months-old daughter of appellant and Hazel Noelke.

Appellant lived with his wife and daughter in the town of Boonville, Indiana, and on the evening of August 28th, 1937, appellaant and his wife and daughter went to the city of Evansville, to visit the mother of appellant who lived at 522 Hess Avenue in the city of Evansville. They remained in the home of appellant's mother that night and on the morning of August 29th, appellant left his mother's home and went to church. He returned from church and then took a ride but would not permit his wife to accompany him on this ride. Some words passed between appellant and his wife at this time. Appellant returned to his mother's home about 11:45 A. M. as he had been instructed to do. He ate dinner at the home of his mother and immediately went into the back yard. Several witnesses testified that when appellant returned for dinner he had been drinking. Appellant's statement is to the effect

that when he sat down in the back·yard after the noon meal he dozed off to sleep. Appellant's wife desired to attend the circus in the afternoon with Mr. and Mrs. William Plump, a brother-in-law of appellant who lived at 522 Hess Avenue. Appellant objected to her going to the circus and told his wife that they had to return to Boonville as their landlord intended to install a sink in the house and appellant had promised to meet him there. Whereupon appellant's wife stated that she wanted to take a ride and go to the circus. Using appellant's own words "one word brought on another and I became mad. I went to my car parked in the rear of the yard, reached into the left front pocket of the car and obtained a German Lueger which I kept there. I returned to where my wife was in the yard. She was holding the baby in her left arm. When I reached a distance of about ten feet of my wife I made a number of remarks in a fit of anger, one of which was 'Well, I am going to put you out of the way as I can't stand this any longer.' I then began firing the gun some nine times directly at my wife and child. She fell to the ground with the baby in her arms. I then realized that I had made a mistake and tossed the gun towards the car. I immediately raised her head and tried to make her comfortable. I later put the gun on the running board of the car and when police arrived I informed them where the gun was. The police took my wife and child to the hospital." Rita Jo Noelke died immediately after reaching the hospital. Hazel Noelke died the following day as a result of the gun shot wounds inflicted by appellant.

The first proposition discussed by appellant in his brief relates to instruction number seventeen which is as follows:

INSTRUCTION NO. 17.

"If you find from all the evidence that the defendant purposely and with premeditated malice

shot at Hazel Noelke, and if you further find that Rita Jo Noelke was killed thereby through being in the path of the bullets fired at Hazel Noelke by the defendant, then and in that event the purpose, intent and premeditated malice existing toward Hazel Noelke is transferred toward Rita Jo Noelke by virtue of the act itself.

"In other words one who attempts to kill another under circumstances amounting to first degree murder, also commits murder in the first degree if some other person is caught in the line of fire and killed thereby. Vanderburgh Circuit Court, Filed Nov 10 1937 Val A. Dietsch Clerk."

Appellant says that by this instruction the jury was directed and permitted to find appellant guilty of murder in the first degree without proof of premeditated malice beyond a reasonable doubt, but it will be noted that by this instruction the court was not instructing the jury on the question of reasonable doubt. He was attempting to state and tell the jury that if they find from the evidence that the defendant purposely and with premeditated malice shot at Hazel Noelke and that Rita Jo Noelke was killed by being in the path of the bullet aimed at Hazel Noelke the intent and premeditated malice existing against Hazel Noelke would be transferred to Rita Jo Noelke, and if the killing of Hazel Noelke was under circumstances that amounted to first degree murder the killing of Rita Jo Noelke would also amount to first degree murder. This we think is the correct statement of the law.

Where a defendant kills one person while attempting and intending with premeditated malice to kill another the material elements of the offense which must be proven beyond a reasonable doubt are:

(a) That there was premeditated malice and purpose to kill the intended victim.

(b) That, in carrying out, or attempting to carry out, the offense against the intended victim the actual

victim was slain by the defendant, such a killing is murder. If the circumstances would have made it first degree murder had the intended person actually been slain it would still be murder in the first degree for the reason that the law transfers the previous felonious intent from the intended victim to the one actually killed. Wharton on Homicide, section 89, page 108. See Wharton's Criminal Law 12th edition, volume 1, section 442; *Brown* v. *State* (1897), 147 Ind. 28, 46 N. E. 34; *Lloyd* v. *State* (1934), 206 Ind. 359, 189 N. E. 406, and *State* v. *Carpio* (1921), 27 N. M. 265, 199 Pac. 1012, 18 A. L. R. 914; *Walker* v. *State* (1856), 8 Ind. 290, and cases cited.

It will also be noted that the court by instructions numbers 8, 9, 10, and 11 fully instructed the jury upon the question of reasonable doubt. the burden of proof and the presumptions of innocence. It is quite clear in our judgment that instruction number 17 is a proper statement of the law and that appellant's rights were in no way prejudiced by this instruction.

Appellant's second proposition relates to instruction number 27 which in part reads as follows:

"If after hearing the evidence, the argument of counsel and instructions of the court you are convinced beyond a reasonable doubt of the guilt of the defendant of the offense of murder in the first degree as charged in the indictment, and if you entertain no reasonable doubt of the soundness of mind of the defendant as defined in these instructions at the time the alleged offense occurred, then you must direct the punishment to be suffered by the defendant and you may say by your verdict:

"We, the jury find the defendant guilty of murder in the first degree as charged in the indictment herein and that he suffer death. . . ."

Appellant contends that by this instruction the burden of proving the unsoundness of mind beyond a reasonable doubt was placed upon appellant and permitted

the appellant to be found guilty of the offense charged when the jury had no reasonable doubt of the soundness of appellant's mind.

The burden was upon the state to prove under the plea filed in this case, the sanity of appellant beyond a reasonable doubt and the jury must find that ██ appellant was of sound mind at the time of the commission of the alleged offense beyond a reasonable doubt, and if the jury entertains a reasonable doubt as to the sanity of the accused at the time of the commission of the alleged offense they cannot legally return a verdict of guilty. *Walters* v. *State* (1915), 183 Ind. 178, 108 N. E. 583; *McHargus* v. *State* (1923), 193 Ind. 204, 139 N. E. 316. As we read the above instruction it is not subject to the criticism urged by the appellant. If after considering the whole of the evidence the jury entertains no reasonable doubt as to the soundness of mind of the defendant then the evidence had reached that degree of cogency which justifies a verdict in favor of the state upon that issue. *Guetig* v. *State* (1879), 66 Ind. 94; *Stevens* v. *State* (1870), 31 Ind. 485; *McDougal* v. *State* (1882), 88 Ind. 24; *Sharp* v. *State* (1903), 161 Ind. 288, 68 N. E. 286; *Freese* v. *State* (1903), 159 Ind. 597, 65 N. E. 915. We find no reversible error in the giving of instruction number 27.

The third error relied upon by appellant for reversal relates to the admission of certain evidence over the objection of appellant. As stated above the appellant filed a special plea of insanity and by the provisions of section 9-1702 Burns' Ind. Statutes 1933, §2216 Baldwin's Ind. St. 1934, which provides in part:

"When an insanity defense is pleaded, the court shall appoint two (2), or three (3), competent disinterested physicians to examine the defendant, and to testify at the trial. . . ."

The court appointed three physicians to examine

appellant and to testify at the trial in accordance with the provision of the above mentioned section of our statute. The appellant objected to the testimony of the three physicians appointed by the court when they were called by the court to testify. The objection to their testimony was based upon the theory that the evidence of these physicians as to the sanity of the defendant after their observation and examination of appellant and based thereon would be to compel the defendant to give testimony against himself of an incriminating nature, and, therefore, the above mentioned statute is unconstitutional and violative of Art. 1, Sec. 14 of the Constitution of Indiana, which provides:

"No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself."

Appellant made no objection to the appointment of the physicians or to the examination made by them. However, we do not consider such failure on his part to be material or in any way influential in the determination of the question presented. The above objection was made to each of the three physicians called and the objection was overruled and the three physicians so named by the court were permitted to testify over the objection of the appellant to the effect that from their examination of appellanat, the observations they made of him, that in their judgment the appellant was of sound mind. In *Ross* v. *State* (1933), 204 Ind. 281, 182 N. E. 865, it was held that the constitutional provision relied upon herein only excludes evidence which rests upon the testimonial responsibility of the defendant, where the person testifying is but the mouthpiece and the defendant is the real witness. In that case the defendant who was being prosecuted on a charge of rob-

bery contended that by being produced before the assistant cashier for identification with a handkerchief over his face and when he had a beard of several hours' growth he was obliged to furnish evidence against himself and was being used for the purpose of self-incrimination, but the court held otherwise.

In the case of *Commonwealth* v. *Millen* (1935), 289 Mass. 441, 194 N. E. 463, a similar objection was made to evidence of a physician touching the soundness of mind of the accused. The court in passing upon the question as to whether or not such testimony given by a physician appointed by the court to examine the accused and to testify to the same at the trial was compelling the defendant to give testimony against himself contrary to his constitutional protection, said (p. 482) :

> "The contention that the defendants were, as a result of the examination of Dr. L. Vernon Briggs, compelled to give evidence against themselves contrary to the provisions of article 12 of the declaration of rights of the Constitution of the Commonwealth is without merit."

In the case of *Jessner* v. *State* (1930), 202 Wis. 184, 231 N. W. 634, the court had under consideration a statute of the State of Wisconsin similar to the provision of the Indiana statute. Constitutional objections were urged to the admission of expert testimony concerning the sanity of the accused and the court in that case gives a rather full and exhaustive discussion of the constitutionality of such statutes and holds that evidence of the character here complained of does not offend against the constitutional provision protecting the accused from being compelled to give evidence against himself.

The Supreme Court of Florida in the case of *Blocker* v. *State* (1926), 92 Fla. 878, 110 So. 547, likewise discussed the question here presented and reviews authori-

ties from other states holding that testimony by experts based upon observation and examination are competent and that such testimony does not amount to compelling an accused to give evidence against himself, and, therefore, is not subject to the constitutional objection here urged.

Witnesses appointed by the court to examine and observe one who is accused of crime and who has filed a plea of insanity to the charge affords the court and jury testimony as free from influence and prejudice as is humanly possible to obtain. Such examinations, however, made by experts, are confined within constitutional limitations and it is unnecessary in this opinion to define such limitations as there is no contention that the physicians testifying in this case violated any of appellant's constitutinoal rights except as heretofore set forth.

The jury is the judge of the facts and it is entitled to the opinion of experts upon the question of the defendant's sanity who are as free from bias and prejudice as is possible under the circumstances. The evidence of the physicians was supported by other testimony. Doctors called by the defendant to testify as to the soundness of appellant's mind did not contradict that produced by the state or of the doctors appointed by the court. The physicians called by and who testified for appellant would go only so far as to say that it was "possible that the accused was insane at the time of the commission of the alleged offense."

On the question of the commission of the crime there is no conflict whatsoever. Eye witnesses to the tragedy testified in substance to the same facts set forth in appellant's own statement. The only question raised by the defendant on this phase of the case related to the condition of his mind at the time. The jury heard the testimony and decided adversely to appellant's conten-

tion. The trial court reviewed and considered the question and sustained the finding of the jury.

We have carefully read all of the testimony and considered all of the questions presented by appellant's brief and we find no reversible error in the record.

Judgment affirmed.