Michael CRISP, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 1178S265.

Supreme Court of Indiana.

Sept. 11, 1979.

J. Richard Kiefer, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

Defendant, Michael Crisp, was found guilty by a jury of murder in the first degree, Ind.Code § 35–13–4–1(a) (Burns 1975) and sentenced to life imprisonment. He now appeals raising the following issues:

1. Whether the trial court erred in applying the "farce and mockery" test to determine defendant's trial counsel's effectiveness and competence;

2. Whether the trial court erred in finding that defendant was not denied the effective assistance of counsel under said "farce and mockery" standard; and

3. Whether defendant's conviction is supported by sufficient evidence.

The evidence at trial most favorable to the state was as follows.

Defendant and Patty Elder dated each other for approximately two and one-half years, during which period they lived together for nearly one year. The couple had difficulty getting along and defendant moved out on January 7, 1976, after which they dated sporadically. During this time defendant twice broke into Ms. Elder's house, twice threatened her, struck her once and cut her phone lines on April 8, 1976.

On April 11, 1976, Patty Elder returned to her home at 11:00 or 11:30 a. m. She saw a knife on the floor which knife she had stuck in the back door so she could tell if someone had opened that door. She left the house and got her neighbor to return with her to retrieve her keys. She then drove to the residence of John Joslin and obtained the assistance of John Joslin, Timothy Brackman and Barbara Joslin. The four returned to Elder's residence. Brackman entered the back door and went down the hallway toward the bedrooms, past the bathroom in which defendant was hiding. Defendant then moved to a closet. Patty, Barbara and John entered the front door and went into the kitchen. John Joslin had a shotgun. They heard a noise and saw defendant holding a revolver. Defendant shot Joslin and the evidence indicates that both barrels of Joslin's shotgun discharged. John Joslin was fatally injured in the shooting.

Timothy Brackman returned to the kitchen and wrestled with defendant. Defendant stabbed Brackman during the struggle and fled the scene. Defendant contacted Father Raymond Wieber and met with him at the St. Lawrence Church. Defendant talked with Father Wieber for approximately thirty minutes and asked him to

drive him to jail, where he surrendered to police.

## I.

■ Defendant first requests that this Court change our standard of review on the issue of adequacy of counsel. This Court has held that:

"Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel unless, taken as a whole, the trial was a mockery of justice." *Blackburn v. State,* (1973) 260 Ind. 5, 22, 291 N.E.2d 686, 696; *Lowe v. State,* (1973) 260 Ind. 610, 612, 298 N.E.2d 421, 422.

See also *Hendrickson v. State,* (1954) 233 Ind. 341, 118 N.E.2d 493. We have recently held that this standard, modified by the "adequate legal representation" standard of *Thomas v. State,* (1969) 251 Ind. 546, 242 N.E.2d 919, is still a worthy standard. *Cottingham v. State,* (1978) Ind., 379 N.E.2d 984. Again we are not persuaded to change this standard.

## II.

■ In applying the mockery of justice adequacy standard, this Court will look to the totality of the circumstances at trial. *Blackburn v. State, supra.* There is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption. *Isaac v. State,* (1971) 257 Ind. 319, 274 N.E.2d 231. If every mistake or oversight made in the preparation of a case or at trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then the majority of all criminal defendants might validly assert such a claim. *Robbins v. State,* (1971) 257 Ind. 273, 274 N.E.2d 255. This Court has consistently sought to determine how, and if, a defense attorney's "inadequacies" have harmed the defendant at trial. *Lowe v. State, supra.*

■ Defendant details several instances of alleged inadequacy on the part of his trial counsel. First, defense counsel failed to make an opening statement and failed to take any notes in preparation for trial. While many attorneys may find such procedures extraordinary, we do not find that, as a matter of law, these omissions deprived defendant of effective assistance of counsel. From the record at the hearing on defendant's motion to correct errors, it appears that defense counsel always waives opening statement as a matter of routine trial strategy.

■ Defendant claims trial counsel should have demanded that opening statements and voir dire be recorded. The trial judge, in a lengthy memorandum opinion on defendant's belated motion to correct errors, noted that this sort of decision reflects:

"a distinction between an exceptionally careful defense lawyer and a defense lawyer who may in part conform to trial court practice in carrying out the administration of a busy trial court."

The judge pointed out that failure to record voir dire or opening argument is not uncommon in the Delaware Circuit Court. Defendant argues that failure to record proceedings is a ground for determining ineffective assistance of counsel and cites *Hillman v. State,* (1954) 234 Ind. 27, 123 N.E.2d 180, as authority for this proposition. However, in *Hillman,* this Court concluded that since none of the trial proceedings was recorded defendant was in effect denied his right to appeal by his counsel's failure to request a court reporter. This is not true in the case at bar. If something prejudicial had occurred during voir dire or opening statements, defense counsel could object and a court reporter could be called for the purpose of making a record.

■ Several alleged mistakes by trial counsel could not possibly have prejudiced defendant. Included among them: failure to conduct proper legal research regarding the constitutionality of the death penalty when defendant was sentenced to life imprisonment; failure to file a timely amended motion to correct errors when defendant was granted leave to file a belated motion to correct errors and a full hearing thereon;

and a motion for mistrial filed after the verdict when, while it was filed at the wrong time, defendant does not argue that a timely motion for mistrial would have afforded him relief.

Defendant argues that he was prejudiced by counsel's failure to file an adequate motion in limine to limit some of the testimony of Patty Elder, the main prosecuting witness. However, again it appears that the defense counsel did not inadequately serve his client's interest here. The trial judge answered this allegation in the following manner:

"The motion was an inadequate motion but even if the motion had been more artfully drawn, considering the overall theory of the defense counsel in the presentation of this case . . . there is little likelihood that motion could have been successful."

We believe the trial judge was in a better position to make this determination than is this Court, since the issue of the denial of the motion in limine is not before us.

Defendant relies heavily upon the fact that his counsel did not interview defense witnesses prior to putting them on the stand. However, defendant does not say what these witnesses would have said had counsel conducted a more informed direct examination. Consequently we will not find that defendant's representation was inadequate because of the failure to interview. *Wynn v. State*, (1976) 265 Ind. 133, 352 N.E.2d 493.

Defendant contends that defense counsel could have interviewed and called several more witnesses who would have testified for the defense. Darlene Dozier allegedly would have testified that both Darlene's phone and Patty Elder's phone worked on the day of the crime, but Elder did not summon police. Others allegedly would have testified that defendant's car frequently overheated, thereby rendering overheating on the day of the crime more likely. Counsel may not have been aware of the potential contribution these witnesses could have made to defendant's case, especially in light of his practice of not interviewing any witnesses. However, just as likely, his decision not to call these witnesses may have been a result of a strategy determination regarding the importance of the allegedly available testimony. We do not have here a case like *Thomas v. State, supra,* in which the defense counsel failed to contact witnesses who would have said that they committed the crime and that defendant was not present.

Defendant does not state specifically what could have been brought out in favor of defendant had Father Wieber been called as a defense witness. Father Wieber did testify for the state. Again it must be shown how defendant's case was prejudiced by the failure to call a witness.

Defendant claims he would have been afforded better representation had his attorney at trial visited the scene of the crime. He claims that if his counsel visited the scene he could have challenged a sketch which showed the bathroom door behind which defendant had been hiding as being hinged on the wrong side. However, defendant's counsel asked defendant about the hinge on direct examination and defendant pointed out that the drawing was wrong. And defense counsel established the confusion on this subject in Patty Elder's mind when he cross-examined her. Furthermore, from the record as a whole, it does not appear that the exact positioning of defendant's hiding place was a factor in the evidence establishing the elements of the crime of which defendant was convicted. Defendant claims a visit to the scene of the crime would have fostered a better cross-examination of Timothy Brackman after he said he came "running down the hall" toward defendant. Defendant points out that it would be impossible to run down such a short hallway. While this seems a minor point, and certainly not one weighing heavily on the determination of the elements of the crime, we must observe that on later direct examination, Brackman modified his statement:

"Not actually running, I will say a trot, okay, a little faster than a walk, but slower than a run."

■ Next defendant claims that his attorney should have interviewed the other eyewitnesses to the crime, Patty Elder, Barbara Joslin and Timothy Brackman. We recognize that interviewing all witnesses is standard practice among defense attorneys. However, in our review we are again constrained to look for what fruit a different course of action on the part of defense counsel would bear. Counsel relied on the witnesses' statements to the police and Brackman's testimony at a prior hearing. He conducted a long cross-examination of Patty Elder and spent some time questioning Barbara Joslin's recollection of the decedent's position and actions at the time of the crime as well as her recollection of her prior statement to the police. Defendant does not assert what his trial counsel would have brought out on cross-examination had he been better prepared. Defendant notes that his attorney questioned Brackman about his wounds on cross-examination and, by so doing, brought to light another wound not mentioned on direct. First, defendant has not been convicted of any crime involving the injury to Tim Brackman. Further, if defendant had a new trial with new counsel, the alerted prosecutor would likely bring out this information if he felt it would help his case.

■ Defendant alleges that his trial counsel had three "serious" conflicts of interest. We do not agree. Defendant does not show how the fact that his attorney represented the decedent, John Joslin, in a prior felony case affected his ability to represent defendant Crisp in the case at bar. The two crimes are in no way connected. Defendant claims that Patty Elder sought defense counsel's assistance in obtaining a peace bond against defendant prior to the crime. This stretches the facts. The evidence adduced at the hearing on defendant's motion to correct errors indicates that Pam Lott and Patty Elder ran into defendant's attorney when they were seeking to stop Crisp from seeing Patty. Pam Lott questioned the attorney in this regard. He told her that Patty would have to get a restraining order or talk to the prosecutor. He offered and was asked for no further consultation. Defendant claims that after the crime, but before defendant had retained counsel, Sharon Long asked defendant's eventual trial counsel to represent Barbara Joslin. Again defendant stretches the facts. The evidence shows that Sharon called the attorney, an old friend, to see if Barbara should be represented as a witness in this case. He said that she did not need private counsel and that the prosecuting attorney "would handle it."

■ Defendant claims that by failing to object to the trial court's self-defense instruction, trial counsel allowed the court to improperly advise the jury that if it found that defendant was an "intruder" and that John Joslin was assisting the "occupant," the jury would then have to convict the defendant. This allegation ignores the plain language of the instruction:

"An intruder may act in self defense to protect himself from an occupant, or one acting on behalf of the occupant, who attempts to kill or seriously injure the intruder when such action has not become necessary, as a result of conduct of the intruder, to protect the occupant, or person on behalf of the occupant, from loss of life or serious bodily injury at the hands of the intruder; however, the intruder may not create circumstances which makes [sic] it either necessary or reasonable that an occupant or person on behalf of the occupant take steps to protect himself or herself in the entry or use of the occupant's premises, or use reasonable force to eject the intruder, and then as a result of such circumstances kill the occupant or person on behalf of such occupant and claim self defense because the occupant or person on behalf of the occupant used other reasonable means to protect himself or herself from an intruder or used reasonable force to eject an intruder."

This proper instruction went on to inform the jury that if they found defendant to be an intruder and that Joslin was acting on behalf of the occupant of the premises, then the instruction applied.

■ Defense counsel offered no objection to the trial court's transferred intent and flight instructions. Defendant claims that there was no evidence to support the giving of a transferred intent instruction and, therefore, it was improper under *Baker v. Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513. However, we do find evidence, including threats, which could support an inference that defendant intended to do harm to Patty Elder, who was standing near the victim.

■ Regarding flight the court instructed the jury in part:

"The flight of a person immediately after the commission of the acts which form the basis for the crime charged, if there were such acts and there was such flight, is a circumstance which may be considered by a jury in connection with all other evidence to aid a jury in determining the guilt or innocence of the accused."

In light of this flight instruction, defendant claims that adequate counsel would have tendered a further instruction that the jury may consider the fact that:

"defendant appeared in public openly at the place to which the defendant went, and the fact . . . that he did not leave the State of Indiana, and the fact . . . that the defendant voluntarily surrendered himself to the officers of the law on the same day of the alleged killing." *Caveney v. State,* (1936) 210 Ind. 455, 463, 4 N.E.2d 137, 139.

Indeed, had the instruction been tendered and refused, the *Caveney* case would demand reversal. However, the failure to ask for this modification may indicate trial counsel's satisfaction that the jury was adequately impressed by the facts regarding defendant's surrender and that they would consider it.

Finally, defendant places great emphasis on defense counsel's assertion, prior to investigating the facts or researching the law involved, that he believed defendant Crisp would be convicted of something. However, defendant was informed of this belief from the beginning. Counsel asserted that he said this in order that defendant would not harbor false hopes of a possible acquittal.

■ While defendant's attorney at trial clearly did not offer defendant optimal representation, the Sixth Amendment to the United States Constitution requires only that defendant have effective assistance of counsel. Defendant's trial counsel placed ten witnesses on the witness stand and five exhibits into evidence. He objected to prosecution questioning throughout the trial and made several motions. Michael Crisp's representation at trial did not amount to a mockery of justice.

### III.

Defendant claims that the evidence was insufficient to sustain his conviction for murder in the first degree. He claims this conviction should be reduced to voluntary manslaughter because of the provocation of defendant by the decedent, John Joslin.

■ In determining whether the conviction was supported by sufficient evidence, this Court neither weighs the evidence nor resolves questions of witness credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. Where there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Poindexter v. State,* (1978) Ind., 374 N.E.2d 509; *Henderson v. State,* (1976) 264 Ind. 334, 343 N.E.2d 776.

■ In the instant case, the evidence as to the alleged provocation on the part of John Joslin was in conflict. The jury could well have believed that Joslin's shotgun was at his side when the shooting took place. There is substantial evidence of probative value supporting the jury's verdict on all elements of the offense charged.

For all the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.