Ralph PRICE, Appellant,

v.

STATE of Indiana, Appellee.

No. 1279S356.

Supreme Court of Indiana.

Nov. 26, 1980.

James A. Neel, Neel & Wyndham, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of murder in violation of I.C. § 35–42–1–1 [Burns 1977]. He was sentenced to forty years in prison.

At about 12:30 a. m., after a day of beer drinking, appellant went to the victim's home to talk to her about their amorous relationship. Later the victim gave appellant a ride home in her automobile. On the way, they stopped at the home of a friend of appellant, ostensibly to pick up some beer. While the victim waited in her car, appellant obtained a twenty–two caliber rifle and returned to the car. When they arrived at appellant's house, appellant shot the victim in the side with the rifle. As her body slumped, he reloaded the gun and fired a second shot. Appellant then went into his house and told his son what had transpired. His son didn't believe him, so appellant, with the body of the victim still in the car, drove to another son's home. From there, he was driven by one of his sons to his ex–wife's house where he was arrested by the police.

■ Appellant first claims the specific intent element of murder was not supported by sufficient evidence. Although there was evidence that appellant was intoxicated at the time he committed the offense, there was also evidence to the contrary. The arresting officer testified that approximately three hours after the incident, it was his opinion appellant had not been drinking. The decedent's daughter, who saw appellant shortly before the murder occurred, testified that appellant had been drinking, but that she didn't know whether he was drunk. This Court has stated that voluntary intoxication is no defense in a criminal proceeding, unless the defendant is so intoxicated as to be incapable of forming intent. *Stevens v. State*, (1978) 267 Ind. 541, 542, 372 N.E.2d 165, 165–66.

The State produced other evidence which supported the conclusion that defendant acted intentionally. Defendant had directed the victim to drive him to a house where his rifle was located, where he obtained a gun, loaded it, and later fired it twice into the side of the victim. Where there is conflicting evidence concerning the question of voluntary intoxication, the presence of mental incapacity is a question of fact for the jury. *Shackelford v. State*, (1976) 264 Ind. 698, 705, 349 N.E.2d 150, 155. In the case at bar, there was substantial evidence of probative value to support the jury's conclusion that appellant intentionally killed the decedent.

■■ Appellant next raises the question concerning his defense of insanity. In the past, once the defendant raised the issue of insanity, the burden shifted to the State to prove a defendant's sanity beyond a reasonable doubt. *Greider v. State*, (1979) Ind., 385 N.E.2d 424; *Coonan v. State*, (1978) Ind., 382 N.E.2d 157. In 1978, the Legislature changed the law and placed the burden of establishing the defense of insanity by a preponderance of the evidence on a defendant. I.C. § 35–41–4–1 [Burns Supp.1978 as amended by Acts 1978, P.L. 145 § 9]. This law became effective on April 1, 1978. Since appellant committed the crime on May 27, 1978, the new state is applicable to him. Appellant contends the statute flies in the face of justice and fair reasoning and that the State should not be relieved of the burden of proving a defendant's sanity beyond a reasonable doubt, as it must prove

every element of a crime charged to obtain a conviction.

While placing the burden on a defendant to prove insanity is a recent development in Indiana, it has long been the law in a number of jurisdictions. See Wharton's Criminal Evidence, § 30 at p. 52 (13th ed. 1972); Annot., 17 A.L.R.3d 146 (1968). In *Grace v. Hopper*, 566 F.2d 507, 509 (5th Cir. 1978), *cert. denied*, 439 U.S. 844, 99 S.Ct. 139, 58 L.Ed.2d 144 (1978), the Court stated, "[t]he states treat the insanity defense in different fashions; slightly more than half place the burden of disproving insanity on the prosecution, while the others place the burden of proving insanity on the defendant." Cases in jurisdictions which place the burden on the defendant view insanity as an affirmative defense, while those which place the burden on the state see sanity as an element of the offense. *United States v. Greene*, 489 F.2d 1145 (D.C.Cir.1973), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974); *Chase v. State*, (1962) Alaska, 369 P.2d 997; *State v. Murphy* (1936) 338 Mo. 291, 90 S.W.2d 103.

In *United States v. Greene, supra*, at 1155, the Circuit Court stated:

"The essential elements of the charge of felony murder do not include proof of sanity. If that were the case, the Government would be required to produce evidence establishing sanity beyond a reasonable doubt as part of its direct case, before the defendant introduced an iota of testimony, and that is not and never has been the law."

Although early Indiana cases hold that sanity is an element of a crime which requires a specific intent, the foundation of these cases is not based upon constitutional considerations. See *Noelke v. State* (1938) 214 Ind. 427, 15 N.E.2d 950; *Fritz v. State* (1912) 178 Ind. 463, 99 N.E. 727; *Stevens v. State* (1869) 31 Ind. 485. The Legislature has examined this state of the law and has seen fit to change the law. We must follow the legislative policy unless that policy is found to be unconstitutional. *State ex rel. Benjamin v. Criminal Ct. of Marion Cty.*, (1976) 264 Ind. 191, 341 N.E.2d 495.

We hold the new statute placing the burden on a defendant is, in fact, constitutional. In a landmark case, *Leland v. Oregon*, (1952) 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, the Supreme Court upheld an Oregon statute which required a defendant to prove insanity beyond a reasonable doubt. In *Rivera v. Delaware*, (1976) 351 A.2d 561, the Delaware Supreme Court followed *Leland v. Oregon* and held that the Delaware statute requiring a defendant to prove mental illness by a preponderance of the evidence was constitutional. The United States Supreme Court refused to review *Rivera* for the reason that it lacked a substantial federal question. *Rivera v. Delaware*, (1976) 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160. One year after *Rivera*, the United States Supreme Court, in *Patterson v. New York*, (1977) 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281, 290, stated unequivocally that it was unwilling to reconsider *Leland* and *Rivera*. We hold that the statute placing the burden of proof of insanity on a defendant is permissible under the United States Constitution and under the Indiana Constitution.

■ Appellant further argues that under the Indiana Constitution, even though he may have the burden to produce a preponderance of the evidence establishing his insanity, once he has presented such evidence, the state must then prove beyond a reasonable doubt that the defendant was sane at the time of the offense. We do not accept defendant's construction of the statute. The statute clearly states, "the burden of proof is on the defendant to establish the defense of insanity by a preponderance of the evidence." I.C. § 35–41–4–1 [Burns Supp.1978, as amended by Acts 1978, P.L. 145 § 9.]

This Court will interpret a statute "so as to give efficient operation to the expressed intent of the legislature." *State v. Bigbee*, (1973) 260 Ind. 90, 93, 292 N.E.2d 609, 611. We hold the language of the statute is clear. We hold that it is the intent of the Legislature that the burden is now on the defendant. The State no longer needs to prove sanity beyond a reasonable doubt.

In the past, where the State had the burden of proving sanity beyond a reasonable doubt, the defendant could challenge the verdict of the jury by an assignment raising the sufficiency of the evidence. The standard of review is different under the new law. Where the party with the burden of proof suffers a negative judgment, a question on the evidence on which he had the burden of proof cannot be raised by an assignment of insufficiency of evidence. *Graves v. City of Muncie*, (1970) 255 Ind. 360, 264 N.E.2d 607. Such a question must be raised on an assignment that the verdict is contrary to law. *Graves, supra*, at 361, 264 N.E.2d 607, 608; *Garbe v. Excel Mold, Inc.*, (1979) Ind.App., 397 N.E.2d 296.

In the case at bar, the jury heard conflicting evidence on the issue of appellant's mental capacity. One psychologist testified that he had talked with appellant and administered various psychological tests which indicated appellant suffered from a mental defect. Two psychiatrists for the State had interviewed appellant and concluded that he was sane at the time of the offense. This Court will not weigh such conflicting testimony. To do so, would be an invasion of the province of the jury.

Appellant next claims that the trial court erred in admitting certain photographs over defendant's objection. State's exhibits 3, 5 and 6 are pre–autopsy pictures of the decedent. State's exhibit number 14 is a post–autopsy photograph of the victim's upper body and head. Trial courts are allowed wide discretion in determining the admissibility of photographic evidence. In *Brandon v. State*, (1978) 268 Ind. 150, 155, 374 N.E.2d 504, 507, Justice Prentice articulated the test for admissibility of such evidence:

> The test to be applied is whether or not the photographs are relevant to any material issue in the case, with the issue of relevancy determined by whether or not the photographs evidence anything that a witness would be permitted to testify to if identified and verified by the witness. *Patterson v. State*, (1975) 263 Ind. 55, 324

N.E.2d 482; *Birkla v. State*, (1975) 263 Ind. 37, 323 N.E.2d 645.

In the instant case, exhibit number 3 depicts decedent as she appeared when the police first arrived. Exhibits 5 and 6 are views of the body from different angles. These two photographs were relevant in that they revealed the fatal wounds sustained by the victim. The fourteenth picture shows the upper body and head of the victim on an autopsy table. The picture also reveals a line of stitches across the upper part of decedent's chest and in a straight line down the middle of her body. The defense attorney made it clear to the jury that the stitches were the consequence of the autopsy and were not inflicted by the defendant. This picture is similar to a photograph which was admitted into evidence in *Fryback v. State*, (1980) Ind., 400 N.E.2d 1128. The photograph in *Fryback* depicted a body with a stitched incision covering the entire length of his chest. In that case, this Court found the prejudicial qualities of the photograph were outweighed by their relevancy. Although gruesome, State's exhibit number 14 is relevant as aiding in proof of the identity of the victim, the fact of death, and the cause of death. See *Graves v. State*, (1980) Ind., 400 N.E.2d 139. Unless it is clear that the appeal to passion and prejudice outweighs the relevance of a photograph, the trial court's determination will not be disturbed. *Brandon v. State, supra*. In the case at bar, we find there was no prejudicial imbalance.

Appellant's next claim is the verdict of the jury was not sustained by sufficient evidence and was contrary to law. He claims that throughout the trial he was denied his lawful presumption of innocence and that the jury failed to reconcile all of the evidence of the theory of his innocence as required by law. This argument is largely based on the premise that he did not have the mental capacity to form the intent to commit the crime. Inasmuch as we have already dealt with that question in this opinion, and inasmuch as we have already discussed the sufficiency of the evidence with respect to the defendant's defense of

intoxication, we find no merit in this argument. We find nothing in this record to sustain appellant's contention that his presumption of innocence was prejudiced in the trial.

Appellant's next claim is that he was represented by inadequate counsel. As evidence of this alleged inadequacy, appellant points out that the defense counsel failed to object to a preliminary instruction of the court which informed the jury of the elements of murder and the potential penalties therefor. Appellant does not assert that the giving of the instruction constitutes reversible error; rather, he argues that the failure to object to this instruction is evidence of inadequate representation.

■ To support this argument, appellant cites the case of *Debose v. State*, (1979) Ind., 389 N.E.2d 272. In that case, this Court held that a trial court should not instruct the jury of potential penalties since, under the new criminal code, the jury has no function regarding the sentence. We first note that in *Debose* it was the defendant who wanted the jury informed of the potential penalty. In the case at bar, the jury was so informed. Further, we can hardly say that defense counsel in the instant case was incompetent for failing to object to the instruction setting out the penalty, since the decision in *Debose* was handed down in May of 1979, three months after appellant's trial. Appellant's counsel can hardly be deemed incompetent for his failure to anticipate the future ruling of this Court in that regard.

■ Appellant also claims his trial counsel was inadequate in that he failed to call two witnesses on appellant's behalf. These two witnesses are not named, and the record indicates that they would have testified that appellant was drunk on the day of the murder. Several other witnesses testified that appellant had been drinking on the day in question. It does not appear that these two omitted witnesses could have added anything new. To prevail on this issue, appellant must demonstrate how his case was prejudiced by the failure to call the witnesses. *Crisp v. State*, (1979) Ind., 394

N.E.2d 115. We see no such demonstration in the record before us.

■ Appellant also claims his trial counsel failed to object to the introduction of appellant's taped video statement and that this failure constitutes gross neglect. Appellant claims the statement was not voluntary because the interview took place at 9:10 a. m., approximately three and one–half hours after his arrest; that he had been drinking for eighteen hours prior to his arrest; and because he was in a traumatic and emotional condition. Even if we assume these factors are true, it does not necessitate the conclusion that trial counsel was incompetent for failing to challenge the admissibility of the statement. The decision of whether or not to raise an issue is a tactical and strategic one to be made by trial counsel. Although the admissibility of a confession may in some cases be a critical issue, it was not in this case. Here there was never any question that appellant killed the victim. We cannot say that the failure to object to the admission of the statement leads to the inescapable conclusion that trial counsel was inadequate.

■ There is a presumption that counsel acted in a proper manner. To obtain a reversal on the ground of incompetent counsel, appellant must show that what the attorney did or did not do made the proceeding a mockery of justice, shocking to the conscience of the reviewing court. *Duncan v. State*, (1980) Ind., 400 N.E.2d 1112; *Herman v. State*, (1979) Ind., 395 N.E.2d 249; *Riner v. State*, (1979) Ind., 395 N.E.2d 140.

In searching the record concerning the competency of trial counsel, this Court will look only to the totality of the circumstances of the trial. *Crisp v. State*, (1979) Ind., 394 N.E.2d 115. In the case at bar, trial counsel proficiently and capably examined and cross–examined the witnesses. He also attempted, in a competent manner, to establish the theory that appellant was too intoxicated at the time of the murder to have acted intentionally and that appellant suffered from a mental condition which was

exacerbated by alcohol and which rendered him unable to conform his conduct to the law.

Viewing the record in its entirety, we cannot find that appellant was in any way prejudiced by his attorney's representation of him at trial. There is certainly no basis for concluding that the proceedings were a mockery of justice shocking to the conscience. We therefore hold that appellant was adequately represented by trial counsel.

THE TRIAL COURT IS IN ALL THINGS AFFIRMED.

HUNTER, PIVARNIK and PRENTICE, JJ., concur.

DeBRULER, J., concurs in result with opinion.

DeBRULER, Justice, concurring in result.

This case and the statute which it construes mark a decided change in the law governing the administration of criminal justice by our courts. Indiana Code § 35–41–4–1, provides:

"(a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt.

"(b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (IC 35–41–3–6) by a preponderance of the evidence."

Under this legislative directive, we shelve a source of some pride in the judicial process by which the determination of guilt has been arrived at. Heretofore the verdict or finding of guilty in a criminal case in which the issue of insanity of the accused at the time of the offense has been fairly, squarely and openly presented, included a determination to a certainty beyond a reasonable doubt that the accused was sane at the time of the offense, i. e., that he had the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the legal norm. Judges and lawyers have, I believe, taken pride in the fact that the guilt label is not applied where that issue is before the court or jury unless the requisite mental capacity is shown to exist to the highest level of certainty. Guilt in such cases has throughout our recent legal past been reserved to those with the demonstrated mental capacity to distinguish between right and wrong. Now, we must turn away from thinking of guilt in this manner.

Under the statute above which guides us now, the finding or verdict of guilty need not resolve the question of whether the accused had the capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the legal norm. It is now permissible, and even desirable for the jury in a case in which sanity of the accused is an issue and fully litigated, to conclude that the accused is guilty as charged, but we do not know, we cannot tell, whether he had the requisite mental capacity or not. Judges and lawyers must now accept such determinations of guilt as regular.

The above statute operates by relieving the State of the burden of proving the sanity of the accused when that issue is raised. We must accept the loss of this measure which maximized the court's ability to discern the dangerously insane defendant, and accept in its stead one which carries with it an increased risk that trial judges and juries will label guilty those who have no capacity to determine the difference between right and wrong.

The statute under consideration is closely related to the following two statutes:

Ind.Code § 35–41–3–6:

"(a) A person is not *responsible* for having engaged in prohibited conduct if, as a result of mental disease or defect, he lacked substantial capacity either to appreciate the wrongfulness of the conduct or to conform his conduct to the requirements of law.

"(b) 'Mental disease or defect' does not include an abnormality manifested only by repeated unlawful or antisocial conduct." (Emphasis added.)

Ind.Code § 35–5–2–3:

"(a) In all cases in which the defense of insanity is interposed the jury (or the

court if tried by it) shall find whether the defendant is:

(1) Guilty;

(2) Not guilty; or

(3) Not *responsible* by reason of insanity at the time of the offense.

"(b) 'Insanity' refers to the defense set out in IC 35–41–3–6.

"(c) 'Mentally ill' means having a mental illness as defined by IC 16–14–9.1–1." (Emphasis added.)

These two statutes are themselves closely allied through their incorporation of the responsibility concept. It is now unmistakable from these three statutes that the interposition of the insanity defense by the accused calls for what amounts to an inquest into his mental condition at the time of the crime. There is little justification to referring to a *defense* of insanity at all, as a defendant who successfully convinces a jury of his insanity receives for his trouble the verdict of not responsible by reason of insanity. As a further consequence of such success the legally insane defendant is placed on a separate track towards confinement under the auspices of attendants and doctors rather than on a track towards confinement under the auspices of guards and wardens.

The statutes mean that the inquest called for by the accused is to be considered a separate and distinct matter from the trial on the charges; however they deem it expedient to conduct it at the same time as the trial on the charges. Held in this perspective, appellant's argument that it is unfair and unjust to place the burden to prove insanity on the accused, is properly rejected, as there is nothing unfair about placing a burden of proof upon a movant at a hearing into his subjective condition. He is best suited to have that burden.

Finally, the court has jumped the gun today in attempting to consider the constitutionality of this statute. I find no such issue raised in appellant's brief; indeed, I find no reference at all in it to either constitution or to any case dealing with the constitutionality of similar legislation. I therefore do not join the majority in expressing a view regarding the statute's validity.