David A. WARD, Appellant,

v.

STATE of Indiana, Appellee.

No. 1081S271.

Supreme Court of Indiana.

Aug. 17, 1982.

Bruce A. Dumas, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged in a two-count information. Count I was for Murder and Count II was for Attempted Murder. Later an additional information charging appellant with Confinement was filed. Appellant was tried before the bench and was found guilty of Murder and Confinement. As to Count II, the Attempted Murder count, he was found guilty of the lesser included offense of Criminal Recklessness. Appellant was sentenced to a forty year term of imprisonment on the murder conviction, a two year term of imprisonment on the conviction for criminal recklessness, and a ten year term on the confinement conviction. All sentences are to run concurrently.

The evidence is as follows: Appellant met one Rhonda Ridgeway, daughter of the decedent in this case, when both were students at a Bible College in Pennsylvania in the fall of 1978. They began dating and by the close of school in the spring of 1979 were discussing marriage. Both lived in Indiana, appellant in Hebron and Rhonda in Wabash, so they continued to see each other during the summer.

The relationship came on hard times, however, and the pair returned to college in the fall of 1979 only to be asked to withdraw early in September. This was due to Rhonda's confession to the authorities there that she and appellant had sexual intercourse with each other during the summer. Once back in Indiana, appellant and Rhonda continued to communicate by telephone during September. Rhonda testified appellant continued to talk about marriage while she was considering terminating the relationship. She finally told him by telephone around September 17 that she considered the relationship ended. On September 23 appellant talked to Rhonda's father, the decedent, by telephone. This conversation ended when appellant hung up on the decedent after an apparent disagreement between them as to the state and future of the relationship between appellant and Rhonda. Later that day appellant called the Ridgeway home again and swore at the decedent.

On September 27 appellant telephoned the Ridgeway home during the day and spoke to Rhonda's brother. Appellant told him he wanted to apologize to the decedent for his earlier behavior and inquired as to what time that evening appellant might find the decedent at home. This message was passed on to Rhonda when she arrived home from work. Rhonda was then the only person at home until about 8:30 P.M. when her father arrived home from working in the fields all day. Rhonda prepared to retire for the evening after informing

her father of the telephone call from appellant.

At that point the doorbell rang and decedent went to the service door of the garage to answer it. Rhonda testified she heard appellant's voice asking to speak with her father. At that time Rhonda testified she was standing in the kitchen where she could see through the door from the kitchen to the garage and to the area around the service door. She testified she saw appellant step into the garage, pull out a handgun, call her father a "son of a bitch," and then shoot him several times. An autopsy report showed Mr. Ridgeway died of injuries suffered from gunshot wounds to the face, chest, and abdomen.

Rhonda then tried to call the police but due to her anxiety and fright was unable to dial the number correctly. She then managed to use a short wave radio transmitter in the living room to say something that alerted the decedent's brother, who was listening on the frequency and lived nearby. She then fled to her bedroom, whereupon appellant tried to force the door open and fired a shot through it. She emerged and the two talked briefly in the living room. Several times he threatened to kill her.

Then the decedent's brother pulled up outside in his truck, in response to the abbreviated call for help he had heard earlier from Rhonda. Rhonda threw a pillow she was holding at appellant and managed to get outside. Appellant followed and fired several shots at her, one striking her in the arm. Her uncle was unable to successfully intercede and apparently left the scene. Rhonda hid in a ditch beside the road but was found by appellant. Then he apparently had a change of heart and talked about taking her to the hospital and having her wound treated. Finally he released her and walked away from the house. He was found and arrested by State Police while walking along a road about five miles from the Ridgeway residence at about 1:30 A.M. the next day.

Appellant interposed an insanity defense to the charges. He now claims the trial court erred in denying his Motion to dismiss. The motion was premised on the grounds I.C. 35–41–4–1(b) [Burns 1979 Repl.] is unconstitutional because it impermissibly shifts the burden of proof on one of the elements of the crime to the defendant.

I.C. 35–41–4–1 [Burns 1979 Repl.] provides:

"*Standard of proof—Defendant's burden to establish insanity.*—(a) A person may be convicted of an offense only if his guilt is proved beyond a reasonable doubt.

"(b) Notwithstanding subsection (a), the burden of proof is on the defendant to establish the defense of insanity (I.C. 35–41–3–6) by a preponderance of the evidence."

Appellant cites *Patterson v. New York,* (1977) 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281, and *Leland v. Oregon,* (1952) 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, in support of his argument subsection (b) of the statute quoted above is unconstitutional. We considered the constitutionality of this statute in *Price v. State,* (1980) Ind., 412 N.E.2d 783 and concluded the statute does not impermissibly shift the burden of proof to the defendant on an element of the crime. In that case we indicated our awareness of the *Patterson* and *Leland* cases. We are still unpersuaded those United States Supreme Court cases are to be read in such a way as to require a holding that the statute challenged here is unconstitutional. Notwithstanding that belief in the continued vitality of *Price, supra,* we will address appellant's argument here, as it is somewhat different than that raised by the appellant in the *Price* case.

Appellant claims *Patterson, supra,* and *Leland, supra,* may be read to stand for the proposition the State may not require the defendant to prove an affirmative defense that specifically negates an element of the crime. If the affirmative defense does negate an element of the crime, the State bears the burden of proving its absence.

We would first point out the Supreme Court was careful in the *Patterson* case to

decline to unilaterally require the State to prove the absence of facts tendered to establish whatever affirmative defenses they chose to recognize. "We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of the accused." *Patterson, supra*, 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292. Nevertheless, we concede the validity of appellant's reading of the *Patterson* and *Leland* cases that "if the affirmative defense specifically negates an element of the crime, then the burden of proof lies on the State to establish ... beyond a reasonable doubt the absence of an affirmative defense or a mitigating factor ...." Appellant's Brief at page 22. We concede there is a difference between affirmative defenses that establish separate and distinct facts in mitigation of culpability and affirmative defenses that negate an element of the crime.

However, we do not agree with appellant that the defense of insanity, as our legislature has defined it, falls in the latter category; namely, the "knowingly" element of the crime of murder. Under I.C. 35–42–1–1 [Burns 1979 Repl.], a person commits murder if he "[k]nowingly ... kills another human being ...." (Emphasis added.) Under I.C. 35–42–2–2(b) conduct is engaged in "knowingly" if the actor "is aware of a high probability that he is doing so." In I.C. 35–41–3–6(a) the legislature has provided for the defense of insanity by stating: "A person is not responsible for having engaged in the prohibited conduct if, as a result of mental disease or defect he lacked the substantial capacity to appreciate the wrongfulness of his conduct ...." Appellant asserts if one is unable to appreciate the wrongfulness of his conduct, he cannot be aware of a high probability the conduct is causing the death of another, *i.e.*, that being insane negates one's ability to "knowingly" kill another.

Justice Hunter speaking for this Court in *Hill v. State*, (1969) 252 Ind. 601 at 607, 251 N.E.2d 429 at 433 stated:

"Many states, like Indiana, have modified the *M'Naghten* test to include the *irresistible impulse* test, the general concensus of opinion among psychiatrists being, as noted by Dean Keedy, that there are cases where a person, suffering from a mental derangement, knows that it is wrong to inflict bodily harm upon another person, but owing to a mental derangement is incapable of controlling the impulse to commit such an act. Keedy, *Irresistible Impulse as a Defense in the Criminal Law*, 100 U.Pa.L.Rev. 956 (1952)"

Thus, we see the test in Indiana does not require the action of the defendant to be entirely "unknowing" to afford the defense of insanity. Even though the defendant may have the knowledge of what he is doing, he may be found not guilty if he, in fact, suffers from mental derangement to the extent of possessing an irresistible impulse. Thus, although "knowingly" is an element necessary in the perpetration of a murder, the presence of that element does not negate the defense of insanity. We, therefore, hold the statute is not unconstitutional as claimed by the appellant because it does not shift the burden of proof of one of the elements of the crime to the defendant, but simply shifts the burden of establishing his affirmative defense of insanity. Proof required of the State that appellant committed the act "knowingly" is not tantamount to proof that the defendant is "sane."

Appellant claims the trial court erred in denying his Motion to Amend and Correct Judgment. He argues the evidence adduced is sufficient only to support a conviction for voluntary manslaughter. He claims the State failed to meet its burden of proving beyond a reasonable doubt the absence of "sudden heat" that would reduce the crime here from murder to voluntary manslaughter.

■ Voluntary manslaughter is defined in I.C. 35–42–1–3(a) [Burns 1979 Repl.]: "A person who knowingly or intentionally kills another human being while acting under a sudden heat commits volun-

tary manslaughter ...." This Court has held where the defendant introduces evidence of sudden heat that would reduce murder to voluntary manslaughter, the State bears the burden of proving its absence if the murder conviction is to be upheld. *Palmer v. State*, (1981) Ind., 425 N.E.2d 640. Where the issue of sudden heat is present, the State may meet its burden of disproving its presence either in its case in chief or in rebuttal. *Palmer, supra.* The state of mind of a killer may be established by evidence of the circumstances surrounding the killing and the method of killing. *Anthony v. State*, (1980) Ind., 409 N.E.2d 632.

Appellant contends evidence of sudden heat was introduced, by virtue both of his own testimony and that of psychiatrists to the effect that at the time of the killing appellant was acting impulsively, perceived the decedent as a threat to him, or was acting "out of control," depending on which psychiatrist's testimony was believed. Conceding appellant presented evidence to raise the issue, the question remains whether the evidence introduced by the State was sufficient to rebut the inference appellant was acting under sudden heat. As we stated in *Palmer, supra* :

> "[T]he presence of the sudden heat claim does not mean the [factfinder] was bound to believe the evidence favoring the defendant, nor does it mean that the [factfinder] could only consider the evidence supporting the presence of sudden heat in Palmer's conduct. The [factfinder] was bound to consider all of the evidence including any that negated the defense, and to resolve any conflicting evidence." Ind., 425 N.E.2d at 645.

This Court will not reweigh the evidence nor judge the credibility of the witnesses. *Palmer, supra.* We hold there is ample evidence in this record from which the Court could find the State met its burden of proving the absence of sudden heat and that there is sufficient evidence to support appellant's conviction for murder.

Appellant claims the verdict is contrary to law, in that the preponderance of the evidence shows he was insane at the time the offense was committed.

Where the sufficiency of the evidence of insanity is questioned by an appellant who has suffered a negative judgment on the question, we will reverse only where the evidence is without conflict and leads to but one conclusion. *Thomas v. State*, (1981) Ind., 420 N.E.2d 1216. In the case at bar the evidence as to appellant's sanity is in conflict. Two psychiatrists testified appellant was insane at the time of the offense. Two psychiatrists testified appellant was sane at the time of the offense. As can readily be seen the evidence does not lead only to a conclusion appellant was insane. In addition to the psychiatrists, a police officer who observed appellant immediately after he was arrested, some five hours after the offense was committed, testified in his opinion appellant was sane then. We hold there is ample evidence in this record to sustain the trial court on the issue of insanity.

The trial court is in all things affirmed.

All Justices concur.