Melvin D. MURRAY, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1078A271.

Court of Appeals of Indiana,
Third District.

Sept. 20, 1979.

---

**3.** We note that *Ross v. Schubert, supra,* was decided subsequent to the trial court's dismissal of Stevens' complaint.

Harriette Bailey Conn, Public Defender, K. Richard Payne, Sp. Asst., Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

On April 8, 1976, Melvin D. Murray was charged with Armed Robbery[1] of a Fort Wayne drugstore. A public defender was appointed to represent him. On June 3, Murray pled guilty to the charged offense and was sentenced to the Indiana Department of Corrections for a period of ten (10) years. Murray thereafter filed a petition for post-conviction relief, which he prosecuted with the assistance of a second public defender. Murray here appeals from the trial court's denial of that petition, and raises the following related issues for our review:

(1) Whether the trial court erred when it concluded that his guilty plea was knowingly, intelligently, and voluntarily made?

(2) Whether the trial court erred when it concluded that Murray was provided with adequate counsel prior to his guilty plea?

(3) Whether the standard which is presently employed to review allegations of inadequacy of counsel is erroneous and should be modified?

We affirm.

## I.

### Guilty Plea

Murray's contention that his guilty plea was not knowingly, intelligently, and voluntarily made is based on the factual assertion that at the time he entered his plea, he was

---

1. IC 1971, 35–13–4–6, Ind.Ann.Stat. § 10–4101 (Burns Code Ed.), repealed effective October 1, 1977, by Acts 1976, P.L. 148, § 24.

suffering severe withdrawal from chronic drug addiction. His withdrawal was allegedly manifested by an "aggravated nervous condition" which required tranquilizing medication. Murray asserts that notwithstanding his condition, which he contends rendered him incapable of making informed decisions, his counsel advised him to "lie" about his physical and mental state when questioned by the judge at the guilty plea hearing. These circumstances, Murray concludes, rendered him incapable of intelligently and voluntarily entering his plea of guilt.[2]

In a post-conviction relief proceeding, it is incumbent upon the petitioner to establish the grounds for relief by a preponderance of the evidence. Ind.Rules of Procedure, Post-Conviction Rule 1, § 5; *Jones v. State* (1974), 262 Ind. 159, 312 N.E.2d 856. The denial of a petition for post-conviction relief constitutes a negative judgment. *Curtis v. State* (1977), Ind.App., 370 N.E.2d 385, 388. Accordingly, the decision of a trial court against a post-conviction relief petitioner will not be disturbed by this Court unless the evidence is without conflict and leads unerringly to a result not reached by the trial court. *Roberts v. State* (1975), 263 Ind. 53, 324 N.E.2d 265, 266. In the application of this standard of review, we will not infringe upon the exclusive province of the trial court to judge the credibility of witnesses. *Jones v. State, supra.*

Murray testified at the hearing on his petition for post-conviction relief that prior to his arrest, he had been ingesting an average daily dosage of thirty to forty hits of "speed." He stated that during the two month period of incarceration which preceded his plea of guilt, he endured a state of extreme anxiety wherein he oftentimes contemplated—and once attempted—suicide. He recalled that his skin constantly itched and broke out in red welts, and that he experienced nausea, blackouts, and flashbacks. He attributed these latter physical aberrations to his use of thorazine, a medication provided to him by Allen County jail authorities.

Other witnesses who were called by Murray to testify at the post-conviction relief hearing generally corroborated his testimony concerning his physical and mental state following his arrest. Joyce Phyls, nurse for the Allen County Police Department, confirmed Murray's testimony regarding his skin condition. Both she and Father Brian Carsten, Chaplain of the Allen County Police Department, described Murray's behavior as introverted. Father Carsten attributed Murray's behavior and condition in part to withdrawal and in part to his incarceration and the charges lodged against him.

Phyls' testimony, together with medical records compiled at the Allen County jail, establish that benedryl, not thorazine[3], was the sedative administered to Murray during the incarceration which preceded his plea. There is no indication in the record that Murray was provided with the drug in the ten days prior to his plea. Similarly, the record does not reveal whether the testimony of Carsten or Phyls was based on observations of Murray made on or near June 3, the date on which he pled guilty.

Murray's testimony at the June 3 guilty plea hearing directly contradicts his testimony at the post-conviction relief hearing:

"Q. Are you sick at this time in any way?

"A. No.

"Q. Are you under the influence of alcohol or drugs at this time?

"A. No.

"Q. Are you having any type of withdrawal symptoms?

---

2. We note that Murray does not contend that he was not advised of his rights as required by IC 1971, 35–4.1–1–3 (Burns Code Ed.). Nor does Murray argue that the trial court failed to fulfill its duty to determine the voluntariness of his guilty plea pursuant to IC 1971, 35–4.1–1–4

(Burns Code Ed.). The record of the guilty plea hearing reveals that the court discharged its duties regarding these matters.

3. Murray did not receive thorazine until two days after the entry of the guilty plea.

"A. No.

"Q. Do you believe that you can think clearly?

"A. Yes.

"Q. If at any time you do not understand anything that is said or done, will you please let me know?

"A. Yes."

As previously noted, Murray contends in his brief that this testimony was false and was the product of his confused state and his counsel's advice to "lie" about his condition and his use of medication. Murray's post-conviction testimony regarding his counsel's advice follows:

> "[H]e was telling me that one of the questions that was gonna be asked was if I was under any medication. And I told him that I was and he said that if I didn't say no, well then I'd have to go back to the jail where I was at in the cell and wait for six to nine months till I am off of medication. . . ."

This testimony does not indicate that counsel for Murray advised him to "lie about his physical and mental condition" at the hearing wherein the plea was entered. Murray's version of his conversation with his attorney, albeit susceptible to various interpretations, suggests only that his counsel informed him of the ramifications of particular answers to questions which he would be asked at the hearing.[4] Moreover, Murray's testimony regarding his motive for "lying" about his alleged use of medication on June 3 buttresses Father Carsten's opinion that Murray's condition and behavior was a product in part of anxiety unrelated to his withdrawal pangs.

The trial court had the opportunity to observe the defendant's mental and physical state at the guilty plea hearing; it is the exclusive province of the trial court to judge the credibility of a witness at a post-conviction hearing. Inasmuch as the evidence regarding Murray's contentions is fraught with contradictions, this Court will not disturb the trial court's finding that

Murray's plea was knowingly, intelligently, and voluntarily made.

## II.

### Ineffective Representation

Murray's contention that he was provided with ineffective representation at and prior to the guilty plea hearing rests in part on his allegation that his counsel advised him to lie about his physical and mental state at the hearing. We have heretofore discussed the invalidity of that bald assertion. Murray also predicates his argument that he was inadequately represented on his post-conviction testimony that prior to the hearing, he consulted with his lawyer only twice for a total of fifteen or twenty minutes.

This testimony directly contradicts his testimony at the hearing wherein the plea was entered. There, the trial court conducted the following colloquy with Murray.

"Q. Who is your lawyer?

"A. Tom Riley [sic]

"Q. Is your lawyer here in Court with you?

"A. Yes.

"Q. Are you satisfied with your lawyer?

"A. Yes.

"Q. Has your lawyer fully advised you as to your constitutional rights?

"A. Yes.

"Q. Do you understand these rights?

"A. Yes.

"Q. Have you had sufficient time to talk with your lawyer before this hearing?

"A. Yes."

In addition to this conflict in the evidence, the failure of Murray to produce his trial counsel's affidavit or testimony at the post-conviction relief hearing raised a presumption that counsel would not have corroborated Murray's allegation of incompetency.

---

4. Murray's failure to produce his trial counsel as a witness at the post-conviction hearing undermines his allegation that he was advised to lie about his condition. *See Lenoir v. State* (1977), Ind., 368 N.E.2d 1356, 1358, as discussed in Issue II, *infra*.

*Lenoir v. State* (1977), Ind., 368 N.E.2d 1356, 1358. Based on the above record, we will not disturb the trial court's finding that Murray's representation at the guilty plea hearing did not constitute a "mockery of justice shocking to the conscience." *Dull v. State* (1978), Ind., 372 N.E.2d 171, 173.

### III.

### Standard of Review

Murray contends that the present standard of review employed by the courts to adjudicate claims of inadequate representation is erroneous and should be discarded. In view of the Supreme Court's long-standing adherence to the "mockery of justice" standard, we decline Murray's invitation to depart from that well-established rule. *See Bucci v. State* (1975), 263 Ind. 376, 332 N.E.2d 94.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.