Frank STUEHRENBERG, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1–181A25.

Court of Appeals of Indiana,
Fourth District.

May 28, 1981.

---

Mark W. McNeely, McNeely & Sanders, Shelbyville, for appellant.

Linley E. Pearson, Atty. Gen., Carolyn M. Brawner, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

The defendant-appellant, Frank Stuehrenberg,[1] was convicted in the Decatur Circuit Court for dealing in a controlled substance in contravention of Ind.Code 35–48–4–1 (1980 Supp.)[2] and sentenced to imprisonment for eight years. He now appeals raising the following three issues:

1) Was Stuehrenberg entrapped into dealing in a controlled substance by the

---

1. At the outset we note that the original indictment listed the defendant's name as "Stern" while his last name also is variously spelled as "Stuehrenber" (on the record of proceedings). "Stuerenberg" (on the State's brief) and "Stuehrenberg" (on the indictment, the trial court's docket, the motion to correct errors and the defendant's brief). We will utilize the last spelling from his brief.

2. IC 35–48–4–1 reads as follows:
 "A person who:
 (1) knowingly or intentionally manufactures or delivers a narcotic drug, pure or adulterated, classified in schedule I or II; or (2) possesses, with intent to manufacture or deliver, a narcotic drug, pure or adulterated, classified in schedule I or II; commits dealing in a narcotic drug, a Class B felony. However, the offense is a Class A felony if the amount of the drug involved has an aggregate weight of ten (10) grams or more, or if the person delivered the drug to a person under eighteen (18) years of age at least three (3) years his junior."
 Ind.Code 35–50–2–5 (1980 Supp.) establishes the penalty for a Class B felony as follows:
 "A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000)."

State's undercover agents and was the evidence sufficient to support the guilty verdict?

2) Did the trial court abuse its sentencing discretion in imposing an eight year sentence?

3) Was Stuehrenberg denied effective assistance of counsel at trial?

For the reasons stated below we affirm the trial court's verdict.

## FACTS

The facts as revealed by the record and gleaned from the State's brief, demonstrate that on August 28, 1979 Robert Cash (the State's confidential informant) received a phone call from Ralph Weaver during which he told Cash he could get Cash some "acid" (LSD) for an unspecified amount of money. Cash then called Robert Shuler (an undercover agent for the State) and told him of the phone conversation. Shuler, with Cash, drove to Weaver's residence in Greensburg where they met him and, unexpectedly, Stuehrenberg. Previously, Shuler and Cash had purchased drugs from Weaver but they never had met Stuehrenberg. Stuehrenberg volunteered he knew where Shuler and Cash could purchase acid at $3.00 per "hit" (i. e., dose) and offered to take Shuler and Cash to the source of the drugs. They accepted Stuehrenberg's offer and, with Weaver, drove to Eden's Cycle Shop in Letts. Upon arrival, Stuehrenberg requested, and Shuler gave him, $150 for 30 hits of acid plus $5 for his effort in purchasing the drugs. Stuehrenberg went into the shop and quickly returned with $150 worth of "yellow wafers" containing the drug. Later at the scene, Stuehrenberg told Shuler the price would be lower the next time he bought some drugs and, significantly, Stuehrenberg assured Shuler he could purchase all the acid Shuler sought with a few days notice. After completing the purchase the four men returned to Greensburg where Weaver and Stuehrenberg left Shuler and Cash at a Kentucky Fried Chicken restaurant.

On January 29, 1980 an information was filed charging Stuehrenberg with dealing in a controlled substance under IC 35–48–4–1. Thereafter he waived his right to a jury trial and following a bench trial on August 4, 1980 was convicted of the crime charged. After considering the pre-sentence report, the court on August 29, 1980 sentenced him to imprisonment for the determinate period of eight years. Stuehrenberg now appeals his conviction and sentence raising the previously stated issues.

## DISCUSSION AND DECISION

A. *Issue One*

■ Stuehrenberg argues the State, through its undercover agent Shuler and informant Cash, entrapped Stuehrenberg and claims the evidence demonstrates not only agent Shuler's initiation and active participation in the crime, but also Stuehrenberg's lack of predisposition to commit the crime. Furthermore, Stuehrenberg challenges the sufficiency of the evidence supporting the conviction arguing the evidence demonstrates he was merely a "go-between" Weaver and Shuler.

■ The State concisely and correctly rebuffs this argument in its brief as follows (omitting references to the record of proceedings):

"It is the State's contention, however, that the Defendant, Frank Stuehrenberg, was predisposed to commit the crime and that the officer and the informant merely afforded Mr. Stuehrenberg the opportunity to commit the offense, thus negating the entrapment defense. *See Silva v. State* (1980) Ind.App., 410 N.E.2d 1342.

When the defense of entrapment is raised, the court must ask itself two questions: (1) Did the police officers or their informants initiate and actively participate in the criminal activity; and (2) is there evidence that the accused was predisposed to commit the crime so that the prescribed activity was not solely the idea of the police officials. If the evidence shows police activity absent any showing of predisposition on the part of the accused, entrapment as a matter of law has been established. *Hardin v. State* (1976)

265 Ind. 635, [539], 358 N.E.2d 134, 136; [Ind.Code] 35–41–3–9 [*sic*] . . . .

In regard to the first question, the record reveals that the answer is clearly yes. The police officer, Robert Shuler, and his confidential informant, Robert Cash, did actively participate in the criminal activity. . . . The second question in regard to predisposition is a question of subjective intent which is a matter for the trier of fact. In the present case, there was no jury and therefore the Judge of the Decatur Circuit Court was the trier of fact. Evidence of events at the time of the sale alone have been held sufficient to sustain proof of predisposition. *Silva [v. State,] supra* at 1345.

An examination of the record in this case reveals sufficient evidence from which the trier of fact could find the requisite predisposition on the part of the Defendant and thus answer the second question in the affirmative. The undercover police officer, Robert Shuler[,] and his informant, Robert Cash[,] had information that the Defendant's companion[,] Ralph Weaver[,] could supply some 'acid'. . . . When Shuler and Cash arrived at Weaver's residence, Cash asked Weaver if he 'did any good' referring to the 'acid' and Weaver said that Frank could. . . . Frank Stuehrenberg then told Shuler and Cash that he could get them some 'yellow wafers' thus volunteering his services for the illegal activity. . . .

Not only did Mr. Stuehrenberg volunteer his services, but he also quoted them a price for the drugs. . . . In addition, he knew of the place where they would have to go to get the drugs and volunteered to direct them there. . . .

Upon arrival at their destination namely, Eden's Cycle Shop in Letts, Indiana, the Defendant asked Mr. Shuler for the money. . . . The Defendant knew exactly where to go and returned in a short period of time with the requested narcotics. . . . Furthermore, upon return the Defendant made reference to the fact that in the future the price would be better. . . . He commented that with a two-day notice he could supply all that they wanted. . . ."[3]

We agree with the State's conclusion that "[c]learly, there was sufficient evidence from which the trier of fact could conclude that [Stuehrenberg] was a ready and willing participant in the illegal transaction." In fact, "Shuler and Cash merely afforded Stuehrenberg the opportunity to commit the offense. With the requisite predisposition having been established the defense of entrapment is therefore negated."

### B. *Issue Two*

 Stuehrenberg next challenges the sentence of eight years imprisonment claiming the sentence "was unusually harsh" in light of the nature of the offense and constituted an abuse of the court's discretion in view of Stuehrenberg's background and family circumstances. Again the State in its brief correctly states the appropriate response to Stuehrenberg's argument (which we adopt) when it points out that he has failed "to present a discernible argument with cited authority in support thereof. *Ballard v. State,* (1974) 262 Ind. 482, 318 N.E.2d 798. In such cases, the defendant has failed to carry the burden of proof and the issue is deemed waived. *Jones v. State,* (1978) Ind., 387 N.E.2d 440; Ind. R[ules of Procedure, A.R.] 8.3(A)(7)."[4]

---

**3.** An assurance by a defendant that "he would be willing to deal in larger quantities of drugs in the future" is evidence of predisposition. *Cyrus v. State*, (1978) 269 Ind. 461, 465, 381 N.E.2d 472, 474, *cert. denied* in 441 U.S. 935, 99 S.Ct. 2058, 60 L.Ed.2d 664.

**4.** As the State emphasizes in its brief, even if Stuehrenberg had not waived this issue, the sentence imposed would not constitute error since a Class B felony is punishable by imprisonment "for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars ($10,000)." In view of Stuehrenberg's prior felony conviction for possession of stolen property, a prior misdemeanor conviction for theft of under $100 and the presently appealed conviction for dealing in a controlled substance, the sentence imposed is well within

## C. Issue Three

■ Stuehrenberg's final challenge argues that his trial counsel was incompetent so as to deny Stuehrenberg a fair trial since his counsel: 1) failed to object to the introduction of any evidence, 2) presented only Stuehrenberg as a witness in his own behalf, 3) allowed the State to cross-examine him as to his knowledge of the illegality of his acts, and 4) attempted to prove that the police officers lacked probable cause to suspect Stuehrenberg of illegal conduct when this had been eliminated as one of the elements of entrapment in *Hardin v. State, supra.* The State responds that all of the challenged actions represented strategic trial decisions which alone can not dictate a reversal. We adopt the State's analysis of this issue.

"There is a presumption that an attorney has discharged his duty fully and strong convincing proof is required to be shown in order to overcome this presumption. *Hollon v. State* (1980), Ind., 398 N.E.2d 1273. Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective counsel. *Hollon [v. State, supra; Lowe v. State* (1973), 260 Ind. 610, 298 N.E.2d 421.

The standard of review on the issue of adequacy of counsel is the "mockery of justice" test as modified by the 'adequate legal representation' standard. *Crisp v. State* (1979), Ind., 394 N.E.2d 115. A defendant must show what the attorney did or did not do which made the proceedings a mockery of justice shocking to the conscience of the reviewing court. *Herman v. State* (1979), Ind., 395 N.E.2d 249; *Murray v. State* (1979), Ind.App., 394 N.E.2d 234. In applying the 'mockery of justice adequacy' standard, the reviewing court will look to the totality of the circumstances at trial. *Smith v. State* (1979), Ind., 396 N.E.2d 898.

Several Indiana decisions have held that the reviewing court will not second-guess the tactics or strategy of a particular attorney. Alleged inadequacies such as the failure to call witnesses, the asking of certain questions at trial, deficient interviewing and investigation have all been held matters of trial strategy. *Hollon [v. State] supra.* [Additional citations omitted]. In *Herman v. State* (1979), Ind., 395 N.E.2d 249, the Court held that defendant had failed to carry his burden of showing incompetency of counsel where the defendant's only complaint was in regard to trial strategy.

In the present case, the record reveals that the evidence was overwhelmingly against the Defendant. As such, the strategy of defense counsel was to a large degree limited. The record shows that defense counsel filed a motion for discovery prior to trial. . . . He also filed a response to the State's motion for discovery . . . and cross examined State's witnesses. . . . In addition, he questioned State's witness George Smith prior to the introduction of State's Exhibit # 2. [A manilla envelope containing the "yellow wafers" purchased by Stuehrenberg].

Allowing the Defendant to testify in his own behalf is purely a matter of strategy. In doing so, trial counsel attempted to prove that the whole trip was not the Defendant's idea. . . . He also sought to show that the Defendant had never participated in similar activities prior to the event in question. . . .

In regard to defense counsel's alleged attempt to prove that the police did not have 'probable cause' to suspect the Defendant of illegal conduct, the State submits that this line of questioning may be viewed in another light. . . . The questions asked of the police officer on cross examination reveal that defense counsel was attempting to prove that the trip of August 18, 1979 was not the Defendant's idea. He sought to prove that the drug transaction was a result of inducements by his companion, Weaver, as well as the police officer and informant. In other

the statutorily prescribed range and is not "grossly disproportionate or unquestionably excessive." *Richardson v. State*, (1979) Ind., 388 N.E.2d 488.

words, he wanted to show that the Defendant, Frank Stuehrenberg, was not predisposed to commit the offense.

Thus, taken as a whole, it seems highly unlikely that defense counsel's method of representation could be classified as [a] 'mockery of justice.' Any inadequacies that may have occurred during trial are not such as to be shocking to the conscience. *Smith v. State* [*,supra,*] held that '[i]f every mistake or oversight made in the preparation of a case or at trial, perceived in the leisure of retrospection, should be considered probatory of legal incompetency, then a majority of all criminal defendants might validly assert such a claim.' [*Id.* at 900]

In addition, the Defendant failed to show how his attorney's inadequacies harmed him at trial, an important factor in the reviewing court's determination. Therefore, the Defendant has not carried his burden of showing that his failure at the trial level was due to the incompetency of his attorney and was not denied adequate legal representation."

It should be apparent that the expeditious manner in which this appeal has been resolved is the direct result of the accurate, concise and well constructed brief prepared by the Deputy Attorney General assigned to this appeal.

We affirm the conviction of and the sentence imposed upon Stuehrenberg.

CHIPMAN, J., concurs.

YOUNG, P. J., concurs in result.