STATE of Iowa, Appellee,

v.

Jimmy Lewis JAMES, Appellant.

No. 85–487.

Supreme Court of Iowa.

Sept. 17, 1986.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., William E. Davis, Co. Atty., and Realff H. Otteson, Asst. Co. Atty., for appellee.

HARRIS, Justice.

Defendant was convicted of three felonies as a result of unusually brutal attacks that occurred over a two-day period in September 1984. He was found guilty of first-degree kidnapping under Iowa Code sections 710.1 and 710.2, assault with intent to commit sexual abuse under section 709.11 and third-degree sexual abuse under section 709.4(1).

Defendant's only assignment of error on appeal is a constitutional challenge to Iowa Code section 701.4 (1983) and Iowa rule of criminal procedure 10(11)(b)(1) which place on an accused the burden to establish an insanity defense by a preponderance of the evidence. Defendant argues the rule denies him due process under both the federal and state constitutions.

The trial court rejected the defendant's constitutional challenge and submitted the insanity defense under a jury instruction which embodied the substance of criminal rule 10(11)(b)(1). Predictably, evidence on the insanity question was conflicting. According to his own evidence the defendant, at the time of the offenses, was disoriented, neglected to take medicine prescribed for a mental disorder, believed he had a computer that could blow up the world, believed he was a physician, owned a large business, and that people were lying to him and stealing from him. His expert witness thought defendant understood the nature and quality of his acts, but only to a degree.

According to the State's evidence defendant was very much in control of himself, both mentally and physically, during the attack and understood what was happening. He could distinguish right from wrong and knew the nature and quality of his acts. By its verdict the jury of course resolved this factual dispute in favor of the State. The substance of defendant's challenge is that the trial court's insanity instruction, and rule 10(11)(b)(1) upon which it was based, unconstitutionally shifted the burden of proof to the accused.

In *State v. Thomas*, 219 N.W.2d 3 (Iowa 1974), overruling a century of precedent, a majority of this court adopted the common-law rule this defendant espouses. *Id.* at 5. Under the *Thomas* holding the burden was

placed upon the State to disprove an accused's claim of insanity.

The legislature responded. It concluded it was more reasonable to require the defendant to prove insanity than it was to have the State prove what was lacking within the mind of the accused. Under Iowa Code section 701.4 and its companion, Iowa rule of criminal procedure 10(11)(b)(1), the majority holding in *Thomas* was rejected. It is this legislative rejection which defendant now challenges as unconstitutional.

I. Defendant first turns to the due process clause under the federal constitution. The federal authorities however flatly reject his contention. In interpreting the federal constitution we are not allowed to differ from the holdings of the United States Supreme Court. *Michigan v. Summers,* 452 U.S. 692, 699–700, 101 S.Ct. 2587, 2592–93, 69 L.Ed.2d 340, 347–48 (1981); *McNabb v. Osmundson,* 315 N.W.2d 9, 13 (Iowa 1982).

In *Leland v. Oregon,* 343 U.S. 790, 798–99, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302, 1307 (1952) the court held that a state statute requiring an accused to establish an insanity defense did not violate due process. *Leland* is still the law. In *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) a challenge to a statute identical to our rule 10(11)(b)(1) was dismissed for want of a substantial question. And in *Patterson v. New York,* 432 U.S. 197, 201–02, 97 S.Ct. 2319, 2322–34, 53 L.Ed.2d 281, 286–87 (1977) the court found no due process violation in a state statute which required the accused to prove a defense of "extreme emotional disturbance," thereby reducing murder to manslaughter.

Defendant's due process challenge under the federal constitution is without merit.

II. Defendant asks that we consider the same challenge under the due process clause of our state constitution. The due process guaranteed in article I, section 9 of the Iowa Constitution is identical to that in the fourteenth amendment to the United States Constitution. Normally we interpret provisions in our constitution which are similar to those in the federal constitution as being identical in scope, import and purpose. In *State v. Boland,* 309 N.W.2d 438, 440 (Iowa 1981) we applied this time-honored principle to the due process clauses of the federal and Iowa constitutions.

Of course no rule requires us to apply the principle which accords our constitutional provision the same interpretation which has been rendered to the companion provision in the federal constitution. Defendant urges us to give Iowa's due process clause an interpretation diametrically opposed to the existing interpretation of the federal clause. But to do so would contradict more than the federal authorities; it would also contradict the clear majority of conclusions of state appellate courts interpreting state constitutions.

Four states have ruled on the question. In *Price v. State,* 274 Ind. 479, 412 N.E.2d 783 (1980) the Indiana court considered a statute requiring a defendant to prove an insanity defense by a preponderance of the evidence. The court followed the United States Supreme Court's *Leland* decision and upheld the statute in the face of both federal and state challenges. *Id.* at 482–83, 412 N.E.2d at 785. The California supreme court resolved the constitutionality of placing the burden of proof on the issue of insanity on the defendant in *People v. Drew,* 22 Cal.3d 333, 583 P.2d 1318, 149 Cal.Rptr. 275 (1978). Drew challenged the statute on both state and federal grounds. The California court upheld the constitutionality of the burden, stating the rule did not conflict with due process. *Id.* at 349–50, 583 P.2d at 1327, 149 Cal.Rptr. at 284. The Maine supreme court discussed proving lack of criminal responsibility in *State v. Crocker,* 435 A.2d 58 (Me.1981). Crocker argued that the state must prove his *capacity* as an element of its case. The court found no merit in the argument. *Id.* at 72. It held that assigning the defendant "the burden of proving lack of criminal responsibility is permissible under the Maine and United States Constitutions." *Id.*

The only contrary result was reached by the Colorado supreme court in *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968). The Colorado court rejected the *Leland v. Oregon* reasoning and found that assigning the burden to the defendant violated the due process clause of the Colorado state constitution. *Id.* at 745–46. Proof of sanity was held to be an element of the case to be proven by the state.

The presumption of constitutionality is strong. According to the rubric, the defendant has

assumed a heavy burden as the following propositions are well established. Ordinarily statutes regularly enacted by the legislature will be accorded a strong presumption of constitutionality and all reasonable intendments must be indulged in favor of the legislation attacked. One who challenges legislation on constitutional grounds has the burden to negate every reasonable basis upon which the statute may be sustained. Where the constitutionality of a statute is merely doubtful or fairly debatable, the courts will not interfere. Thus a statute will not be declared unconstitutional unless it clearly, palpably and without doubt, infringes the Constitution [authorities].

The judicial branch of the government has no power to determine whether the legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some provision of the Constitution.

*State v. Hall,* 227 N.W.2d 192, 193 (Iowa 1975).

The presumption of constitutionality arises, not because we do not take the constitution seriously, but because we do. All three branches of government were commissioned by the same constituency. It is the primary function of the legislative branch to declare what the law shall be. When the people acting through that branch have made such a solemn declaration, our scheme of government calls upon the judicial branch to strike it down only with profound reluctance and only when it clearly falls outside the basic charter of government. The provision challenged here clearly withstands scrutiny under this standard.

This court is in a poor position to subscribe to defendant's claim that the burden under the rule is so fundamentally unfair as to be unconstitutional. During most of our state's history we preferred the burden under the challenged rule and adopted it as a matter of common law. When we changed the rule in *Thomas* in 1974 our decision was five to four, with no claim by any member of the court that a constitutional question was involved.

It is readily apparent why we felt no constitutional impetus for the holding in *Thomas.* Insanity is a subjective condition bound up inside the mind of the accused. In raising the insanity defense an accused claims a mental condition at variance with what is normal and expected. *See State v. Snethen,* 245 N.W.2d 308, 310–11 (Iowa 1976) (presumption of sanity revived in formerly insane person by medical facility director's notification that accused's mentality was restored).

The assignment is without merit.

III. Defendant attempts to argue as a separate contention that rule 10(11)(b)(1) unconstitutionally requires an accused to prove a claim in negation of the mens rea element of the offense. The gist of the contention, as we understand it, is that the concept of sanity means the same thing as capacity to commit the crime. In those offenses, such as the ones involved here, where a criminal intent is an element, the defendant would append sanity to the showing required of mens rea. The result would be to add sanity as an element in all criminal intent crimes. Most crimes would be included.

The practical thrust of the contention is identical to the one we have already rejected. It must be remembered that the purpose of the challenged rule was not to shape the elements of various crimes. Rather, its purpose was to establish the applicable legal standard for deciding, in

the face of evidence of mental impairment, who should answer for their crimes. *State v. McVey*, 376 N.W.2d 585, 588 (Iowa 1985). Those who should answer could be selected without regard to the elements of various offenses.

Defendant's argument is based on two premises: (1) mental capacity to commit the offense is an element of the crime; and (2) sanity is the same thing as capacity to commit the crime. Defendant concludes from these premises that the rule unconstitutionally places the burden of disproving an element on him. We disagree with defendant's first premise and are unwilling to adopt his second. And we reject the assignment because we think the premises, even if adopted, would not lead to his conclusion.

Defendant's argument comes down to a complaint that the State should not escape the burden of proving an element of the offense. Elements, however, are promulgated by the legislature because all Iowa crimes are statutory. In the prior divisions of this opinion we have held that rule 10(11)(b)(1) otherwise passes constitutional muster. This being true the legislature was free, if it chose, to subtract this element from the offense. Defendant's challenge would fail even if the element of the offense here was in fact subtracted from the proof required by the state.

The assignment is without merit.

AFFIRMED.

All Justices concur except LAVORATO, J., who dissents, and NEUMAN, J., who takes no part.

LAVORATO, Justice, (dissenting).

The legislature has an open range to roam in criminal law and procedure, now that the "presumption" of constitutionality begins and ends the analysis of any challenges to what is today sacrosanct: the Iowa Code. It was our forefathers who lived under a constitutional monarchy, where parliamentary acts are by definition constitutional. They left that form of government behind in coming here. In this republic legislative power is not carte blanche: it may not transcend the guarantees of our constitutions. That does not mean the judiciary may put an ax to the head of every statute it finds distasteful, poorly-worded, or behind-the-times. But just as important, and probably more so, it should be wary when the legislature puts constitutional guarantees on the chopping block. The legislative majority may rule, but only to certain limits, and upon the breach of those limits the judiciary cannot sit and watch the death of once-honored principles.

The majority's unfettered deference to the legislature may also explain their unfettered deference to the Supreme Court, and their mechanical adherence to the idea that what is good for the goose is good for the gander.

What the majority seem to have forgotten is that the Iowa Constitution "shall be the supreme law of the state...." Iowa Const. art. 12, § 1.

> It is the highest law of our state, yet it is sometimes esteemed the lowest. It is routinely cited, then routinely forgotten. It is our birthright, which we have sold for a bowl of federal porridge.

. . . . .

All too often legal argument consists of a litany of federal buzz words [or case names] memorized like baseball cards. *State v. Jewett*, 500 A.2d 233, 235, 236 (Vt.1985) (footnote omitted). We push aside our constitutional responsibilities when we merely look to the Supreme Court for answers in examining the state constitution. It is beyond belief that we should unquestioningly toe the line in every area in which the Court has spoken since *Marbury v. Madison*. Of what import is our state constitution then?

More important, the majority do not answer the defendant's arguments.[1] Instead

1. Their conclusions carry no analysis. For example, *why* is it "more reasonable" to require

they use an abacus for counting the courts that relied on a poorly-reasoned Supreme Court decision in dismissing similar challenges under state constitutions. This technique is hardly a surprise, for if they did not employ it, they would not reach the conclusion they desire. No one would dispute that brevity is a laudable goal, but paring analysis to the mere bone of a conclusion accomplishes little except to save pages in our reporters. If the majority's conclusion is correct, we must wait until October for some meat on the bone. *See Martin v. Ohio, cert. granted,* 475 U.S. ——, 106 S.Ct. 1634, 90 L.Ed.2d 180 (1986) (constitutional challenge to state's requirement that defendants bear burden of proof on self defense).

## I.  *Federal constitution.*

The case law on burdens of proof illustrates great tension in this area of criminal law. On the one hand, the Supreme Court has indicated that placing the burden of proving insanity by a preponderance of the evidence with defendants may be unconstitutional. *Cf. Mullaney v. Wilbur,* 421 U.S. 684, 703, 95 S.Ct. 1881, 1892, 44 L.Ed.2d 508, 522 (1975) (state statute requiring defendants to prove provocation as a defense to murder, reducing crime to manslaughter, violates due process); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970) (due process requires proof beyond a reasonable doubt of every fact necessary to constitute offense); *Davis v. United States,* 160 U.S. 469, 484, 16 S.Ct. 353, 357, 40 L.Ed. 499, 504 (1895) (federal government must prove defendants' sanity beyond a reasonable doubt).

On the other hand, the Court essentially stated—twenty-five years ago—it is not unconstitutional. *See Leland v. Oregon,* 343 U.S. 790, 799, 72 S.Ct. 1002, 1007–1008, 96 L.Ed. 1302, 1309 (1952) (state statute requiring defendants to prove insanity beyond a reasonable doubt does not violate due process). *Cf. McMillan v. Pennsylvania,* —— U.S. ——, ——, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67, 79 (1986) (state statute

effectively requiring defendants to prove by a preponderance that they did not "visibly possess a firearm" during a felony, exempting them from mandatory minimum sentence of imprisonment, does not violate due process); *Patterson v. New York,* 432 U.S. 197, 201–202, 97 S.Ct. 2319, 2322–34, 53 L.Ed.2d 281, 286–87 (1977) (state statute requiring defendants to prove "extreme emotional disturbance" as a defense to murder, reducing crime to manslaughter, does not violate due process); *Rivera v. Delaware,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976) (statute placing proof of insanity by a preponderance with defendants affirmed on authority of *Leland* by state court; appeal dismissed for want of substantial federal question). *See generally Jones v. United States,* 463 U.S. 354, 368 n. 17, 103 S.Ct. 3043, 3051, 77 L.Ed.2d 694, 707 (1983).

The determinative question for our review is whether *Leland,* which held that a state may require a defendant to prove insanity beyond a reasonable doubt, remains valid. *Compare Mullaney,* 421 U.S. at 705, 95 S.Ct. at 1893, 44 L.Ed.2d at 523 (Rehnquist, J., concurring) (valid) *with State v. Buchanan,* 207 N.W.2d 784, 789 (Iowa 1973) (McCormick, J., dissenting) (not valid). *See generally* 4 J. Yeager & R. Carlson, *Iowa Practice* § 5, at 3 (1986 cum. supp.); Comment, 43 Brooklyn L.Rev. 171, 189 n. 84 (1976) ("The significance of *Leland* with respect ... to the insanity defense ... is as clear as mud.")

The Supreme Court is the final arbiter of the federal constitution. *McNabb v. Osmundson,* 315 N.W.2d 9, 13 (Iowa 1982). Absent express overruling of a case's holding or circumstances clearly suggesting it is no longer valid, we may not ignore the Court's pronouncements on the federal constitution. *Cf. Buzynski v. Oliver,* 538 F.2d 6, 10 (1st Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 503, 50 L.Ed.2d 596 (1976) (*Leland* still binds lower federal courts); *United States v. Greene,* 489 F.2d 1145, 1156 (D.C. Cir.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 318 (1973) (same).

defendants to prove insanity than to require the    State to prove defendants' sanity?

*Leland* has not been expressly overruled; and the most recent indication from the Court is that it remains valid. *See Rivera,* 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160; *see also Patterson,* 432 U.S. at 207, 97 S.Ct. at 2325, 53 L.Ed.2d at 290. Therefore, I agree with the majority that the defendant was not effectively denied federal due process by section 701.4.

## II. *State constitution.*

Although similar federal and state constitutional provisions are often deemed identical in scope, import, and purpose, *State v. Boland,* 309 N.W.2d 438, 440 (Iowa 1981), the state constitution may afford broader protection to a criminal defendant, *State v. Roth,* 305 N.W.2d 501, 510 (Iowa) (McCormick, J., dissenting), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). Thus, we are not obliged to follow *Leland* in deciding whether the defendant was denied due process under Iowa Constitution article 1, section 9. As stated in *State v. Stump,* 254 Iowa 1181, 1214, 119 N.W.2d 210, 229 (Thornton, J., dissenting), *cert. denied,* 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963):

> Mark Twain is quoted as saying, "Loyalty to a petrified opinion never yet broke a chain or freed a human soul." This court certainly has no loyalty to a mistaken view, no matter how long such has stood.

*See Bierkamp v. Rogers,* 293 N.W.2d 577, 579–81 (Iowa 1980) (guest statute violates state, but not federal, constitution).

*A. Background.* Placing proof of insanity with the defense originated over a hundred years ago with judicial concern that cunning defendants might pull one over sniffling juries. *See generally* H. Weihofen, *Insanity as a Defense in Criminal Law* 151 (1933). This procedural practice,

however, was not unanimous. *See* G. Fletcher, *Rethinking Criminal Law* 519 n. 13, 538 (1978).[2] It obtained support when the House of Lords required defendants to prove insanity by a preponderance of the evidence in 1843 after the royal and public outcry over M'Naghten's acquittal. *See id.* at 526 n. 42; *see also United States v. Freeman,* 357 F.2d 606, 617 (2d Cir.1966). Initially, this court chose to require defendants to prove insanity by a preponderance, rather than to prove it beyond a reasonable doubt, in *State v. Felter,* 32 Iowa 49, 53–54 (1871).[3]

In 1895, the Supreme Court in *Davis* held that the *federal* government must prove defendants' sanity beyond a reasonable doubt. Although *Davis* was a nonconstitutional decision, it was the catalyst for many courts to require the prosecution "to bear the risk of residual doubt not only on insanity, but on all substantive issues bearing on liability." Fletcher, *Rethinking Criminal Law, supra,* at 535, 538. But fifty years after *Davis* the Court held in *Leland* that a *state* may require defendants to prove insanity beyond a reasonable doubt. Twenty years later we opted to follow *Davis* and not *Leland* in *State v. Thomas,* 219 N.W.2d 3, 4–5 (Iowa 1974), overruling *State v. Felter* and its progeny of one hundred years.[4]

*(1 ).* Although section 701.4 is presumed constitutional, *see* Iowa Code § 4.4(1), our former statute requiring defendants to prove alibi by a preponderance of the evidence was held unconstitutional in *Stump v. Bennett,* 398 F.2d 111, 118 (8th Cir.), *cert. denied,* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968). One commentator suggests that reasoning should control here: Any distinction between alibi and insanity

---

2. When our constitution was ratified in 1857, it appears there was no judicial consensus on the issue. *See* Fletcher, *Rethinking Criminal Law, supra,* at 519 n. 13, 538.

3. This case is the first time we have considered whether *the State* is constitutionally required to bear the persuasion burden on *sanity* when capacity is at issue.

4. The majority state it is "readily apparent why [the court] felt no constitutional impetus" in *State v. Thomas:* "Insanity is ... bound up inside the mind of the accused." The connection escapes me. In my mind *State v. Thomas* was simply decided on common-law grounds because the defendant raised no constitutional ones.

is not persuasive as a reason for assigning the burden of persuasion with regard to even the traditionally labeled affirmative defenses to the defendant. As to all these claims for exoneration, their truth goes in final analysis to the guilt, to the rightness of punishing, the accused. Thus it seems inconsistent to demand as to some elements of guilt, such as an act of killing, that the jury be convinced beyond a reasonable doubt, and as to others, such as ... [the] capacity to know right from wrong, the jury may convict though they have such doubt.

C. McCormick, *Evidence* § 341, at 802 (1972).

Insanity is a common-law defense with roots that are centuries old. *See* Perkins, *Criminal Law, supra,* at 851 (insanity first recognized as defense in reign of King Edward II (1307-27)). Thus, we need not consider that the legislature may be "chilled" from enacting reforms in criminal law or procedure if section 701.4 is declared unconstitutional as applied. *Compare Patterson,* 432 U.S. at 202, 97 S.Ct. at 2323, 53 L.Ed.2d at 287 *with State v. Monroe,* 236 N.W.2d 24, 34 (Iowa 1975). *See generally* Underwood, *The Thumbs on the Scales of Justice: Burdens of Persuasion in Criminal Cases,* 86 Yale L.J. 1299, 1314-17 (1977).

*(2).* The majority observe that three of four courts have upheld, under their state constitutions, a requirement that defendants prove insanity by a preponderance of the evidence. They label these cases a "clear majority" of the case law on the issue. This box score thus has saved the State. But if box scores really matter, there is no shortage of authority that it is the better practice to require the State to prove a defendant's sanity beyond a reasonable doubt, rather than to require a defendant to prove insanity by a preponderance. In fact, that authority is virtually unanimous. *Compare* A.B.A., *Criminal Justice Mental Health Standards* § 7-6.-9(b)(i), at 378 (1984); 1 *Model Penal Code and Commentaries* § 1.12(2)(a), comment, at 191 (1985); Fletcher, *Rethinking Criminal Law, supra,* 539-40; A. Goldstein, *The Insanity Defense* 121 (1967); W. LaFave & A. Scott, *Criminal Law* 45, 48 (1972); McCormick, *Evidence, supra,* § 341, at 800-802; Perkins, *Criminal Law, supra,* 883 n. 89; 1 P. Robinson, *Criminal Law Defenses* 142 (1984); 1 N. Walker, *Crime and Insanity in England* 118 (1968); H. Weihofen, *Mental Disorder as a Criminal Defense* 220 (1954); 1 *Wharton's Criminal Evidence* 74 (1985); G. Williams, *Criminal Law* 518-19 (1961); Ashford & Risinger, *Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview,* 79 Yale L.J. 165, 322-23 (1969); Eule, *The Presumption of Sanity: Bursting the Bubble,* 25 UCLA L.Rev. 690-91 (1978); Jeffries & Stephan, *Defenses, Presumptions, and Burdens of Proof in Criminal Law,* 88 Yale L.J. 1325, 1340 n. 1 (1979); Osenbaugh, *The Constitutionality of Affirmative Defenses to Criminal Charges,* 29 Ark.L.Rev. 429, 453-54 (1976); Note, 56 B.U.L.Rev. 499, 500 (1976); Note, 64 Geo.L.J. 871, 882-83 (1976); Note, 54 Ind.L.J. 95, 103 (1978-79); Note, 53 Notre Dame Law. 123, 138-39 (1977); Case Note, 24 Drake L.Rev. 246, 247 (1974); Case Comment, 11 Harv.C.R.-C.L.L.Rev. 390, 413-14 (1976); Comment, 30 La.L.Rev. 117, 125, 128 (1969); Comment, 28 Me.L.Rev. 500, 506 (1976); Recent Development, 51 Wash.L.Rev. 953, 971 (1976) *with* Bonnie, *The Moral Basis of the Insanity Defense,* 69 A.B.A.J. 195, 197 (1983) ("a close question," but permissible to place burden on defendant); Comment, 20 La.L.Rev. 749, 751 (1960).

The reasoning of such authorities is largely that proof of sanity, if not identical, is often identical to proof of intent, a persuasion burden resting with the prosecution. *See United States v. Jackson,* 587 F.2d 852, 854 (6th Cir.1978) ("insanity negates criminal intent"); *United States v. Greene,* 489 F.2d at 1175 (Bazelon, C.J., to grant rehearing en banc) (sanity has always been a fact question involving the same inquiry needed to determine intent); E. Dangel, *Criminal Law* 195 (1951) ("Legal insanity and criminal intent cannot coexist."); J. Hall, *Criminal Law* 449 (1947);

LaFave & Scott, *Criminal Law, supra,* at 48 (there is a "substantial overlap" between the insanity defense with the absence of an essential mental state); J. Miller, *Criminal Law* § 36, at 125 (1934); Robinson, *Criminal Law Defenses, supra,* at 72 (insanity is "in essence no more than a negation of an element required by the definition of the offense"), 130, 141–42; *Wharton's Criminal Evidence, supra,* at 74 ("Since the prosecutor has the burden of proving mens rea as an element of the crime charged, it would seem to follow that the prosecutor has the burden of proving the defendant's sanity."); Eule, 25 UCLA L.Rev., *supra,* at 690 ("there is no sound reason to treat the issue of insanity any different from the issue of intent"); Fletcher, *Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases,* 77 Yale L.J. 880, 883 (1968); Osenbaugh, 29 Ark.L.Rev., *supra,* at 441 ("insanity as a defense establishes the defendant's lack of mental capacity to conform his conduct to that of the law"); Note, 56 B.U.L.Rev., *supra,* at 512 ("proof of mens rea invariably involves factual determinations that the mental capacity of the accused was sufficient to entertain the requisite mens rea"); Note, 64 Geo.L.J., *supra,* at 891 ("insanity evidence is directed at the defendant's state of mind, including his ability to formulate intent"); Note, 64 Iowa L.Rev. 984, 995 (1979) ("the same evidence that is relevant to demonstrating insanity is also likely to be relevant to whether a defendant possesses the mens rea that constitutes an element of the crime"); Case Comment, 11 Harv.C.R.–C.L. L.Rev., *supra,* at 405, 410 n. 88; *see also Jones,* 463 U.S. at 373 n. 4, 103 S.Ct. at 3054, 77 L.Ed.2d at 711 (Brennan, J., dissenting) ("insanity and mens rea stand in a close relationship").

This court eventually adopted the practice requiring the prosecution to prove defendants' sanity beyond a reasonable doubt in *State v. Thomas,* 219 N.W.2d at 4–5, and joined the majority of jurisdictions, *see* Annot., 17 A.L.R.3d 146 (1968). The legislature, however, effectively overruled *State v. Thomas* in enacting section 701.4. The question remains whether this defendant was denied due process when he was required to prove his insanity by a preponderance of the evidence.

*B. The State's arguments.* In citing four cases the majority summarily conclude section 701.4 did not effectively deny the defendant his due process. Mere citation to cases, however, without examining the *reasons* on which they are based, is akin to praising the Emperor's new clothes. If precedent is to have any value it must be based on a convincing rationale. I have looked in vain for one in examining case law on this issue.

*(1).* To say that insanity is an "affirmative defense" and thus its proof should be borne by defendants is a conclusion and not a basis for analysis. It opens the door to the quagmire of *Patterson* and *Mullaney,* which reach opposite results on virtually the same facts. Reliance on labeling by the legislature is universally condemned because it has no constitutional limits:

> To use an absurd but instructive example, a statute could read:
> § 1 Whoever is present in any private or public place is guilty of a felony, punishable by up to 5 years imprisonment.
> § 2 It shall be an affirmative defense for the defendant to prove, to a preponderance of the evidence, that he was not robbing a bank.

Dutile, *The Burden of Proof in Criminal Cases: A Comment on the Mullaney-Patterson Doctrine,* 55 Notre Dame Law. 380, 383 (1980) (footnote omitted).

This absurdity does not deter the majority. Their final word is that the defendant's challenge would fail even if an element of the offense here had been subtracted by the legislature. They have ignored *State v. Gibbs,* 239 N.W.2d 866, 869 (Iowa 1976) and *State v. Monroe,* 236 N.W.2d at 34, which recognized that intent is an element that cannot be converted to an issue affecting only mitigation of punishment. They have also ignored the commands of the Supreme Court in *McMillan,* —— U.S. at

——, 106 S.Ct. at 2417, 91 L.Ed.2d at 76–77, and *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292, that a legislature does not have unbridled power to define the elements of crimes. Perhaps the majority's deference to the Court is not so unfettered after all.

(*2*). The State argues it will suffer hardship if it must prove sanity because defendants have "better access" to its evidence. *See* Bonnie, 69 A.B.A.J., *supra*, at 197; *but see* Weihofen, *Insanity as a Defense in Criminal Law, supra*, at 156 n. 28; Case Comment, 24 Drake L.Rev., *supra*, at 248. Once again the imagined collapse of the State's ability to prove its case is said to justify placing proof of insanity with defendants. The Court in *Davis*, however, answered this argument decades past, and it cannot be said mass acquittals have resulted from that decision. *See United States v. Torniero*, 735 F.2d 725, 726 (2d Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985) ("the insanity defense is infrequently raised and rarely successful"); *The Insanity Defense: Hearings on S. 818, S. 1106, S. 1558, S. 2669, S. 2672, S. 2678, S. 2745, and S. 2780 Before the Committee on the Judiciary of the United States Senate*, 97th Cong., 2d Sess., July 19, 28, August 2, 4, 1982 (Serial No. Y89/2: J–97–126), at 63 (Randolph A. Read, M.D., forensic psychiatrist: recent statistics indicate that insanity acquittals are "about 0.1 to 0.6 [percent] of all adult felony cases"), at 51 (Robert A. McConnell, Assistant U.S. Attorney General: in 1981 there were four insanity acquittals in federal courts). The Court in *Mullaney*, assuming defendants may have better access to certain evidence, rejected it as a basis for placing burdens of proof with defendants. 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at 521. The argument is unpersuasive for several reasons.

First, any hardship is offset by the presumption of sanity.[5] *See generally State v. Lass*, 228 N.W.2d 758, 768 (1975); 2 *Iowa Uniform Jury Instructions* 206 (1984).

Absent evidence to the contrary this presumption sustains the State's burden. LaFave & Scott, *Criminal Law, supra*, at 312; McCormick, *Evidence, supra*, § 346, at 830; 3 L. Orfield, *Criminal Procedure Under the Federal Rules* 380 (1966); Robinson, *Criminal Law Defenses, supra*, at 23, 130–31. It is

> unquestionably part of a weighting process which expresses a preference for the criminal sanction. The underlying assumption is that if errors are to be made about who is sane and who is not, they should be made in favor of sanity. . . .

Goldstein, *The Insanity Defense, supra*, at 115.

Second, the State concedes it must prove the defendant's intent. But there is no greater difficulty to acquire evidence on his sanity than on his intent. *See* Note, 54 Ind.L.J., *supra*, at 105; *see also Osenbaugh*, 29 Ark.L.Rev., *supra*, at 451 (state's needs satisfied by requiring defendants to bear production burden). Both facts involve proof of his state of mind. Indeed, the State is provided with a mechanism to acquire proof of sanity. *See* Iowa R.Crim.P. 10(11)(*b*)(2) (State has right to expert examination of defendant if notice of insanity defense given). To this extent proof of sanity is easier to acquire than proof of intent.

Similarly, the State has the resources to obtain psychiatric evidence. LaFave & Scott, *Criminal Law, supra*, at 313; Goldstein, *The Insanity Defense, supra*, at 121; Eule, 25 UCLA L.Rev., *supra*, at 641. It is not handicapped in proving its case. *See* T. Szasz, *Law, Liberty, and Psychiatry* 136 (1963) ("It is well known that it is easy to obtain both positive and negative psychiatric testimony in the same case."); Saunders, *The Mythic Difficulty in Proving a Negative*, 15 Seton Hall L.Rev. 276, 277 (1985) (proving sanity is not more difficult than proving insanity).

Last, almost nothing would remain of the standard of proof beyond a reasonable

---

**5.** "Presumption" is not an accurate term because "the fact of sanity is not logically deduced from proof of some other basic fact." 1 *Wharton's Criminal Evidence, supra*, at 74.

doubt if this argument carried the day: "The defendant's access to evidence is greater than that of the prosecution for *any* issue about his own behavior or state of mind." Underwood, 86 Yale L.J., *supra*, at 1332 (emphasis added).

(*3*). The insanity defense may not be constitutionally required. *Compare State v. Korell*, 690 P.2d 992, 998–99 (Mont.1984) (not required) *with State v. Lange*, 168 La. 958, 123 So. 639, 641–42, (1929); *Sinclair v. State*, 161 Miss. 142, 132 So. 581, 582, (1931); *State v. Strasburg*, 60 Wash. 106, 110 P. 1020, 1023 (1910); Perkins, *Criminal Law*, *supra*, 809–812 (required). Assuming that it is not, it may be argued that a legislature, holding the power to create the defense, may also condition it.

This argument merely begs the question which burdens the State must bear when it charges a criminal offense: the core of due process is *procedural* control over governmental action. *See* Saltzburg, *Burdens of Persuasion in Criminal Cases: Harmonizing the Views of the Justices*, 20 Am. Crim.L.Rev. 393, 399 (1983); Underwood, 86 Yale L.J., *supra*, at 1312–18 & n. 49. Legislative enactments that in some way benefit those persons charged with crimes may not ignore or circumvent procedural due process. *Cf. Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 664 (1973) (notice and opportunity to be heard are prerequisites for probation revocation); *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 2603, 33 L.Ed.2d 484, 498–99 (1972) (notice and opportunity to be heard are prerequisites for parole revocation). Logically extended, the argument permits a denial of counsel, trial by jury, or any other procedural right with respect to defenses not constitutionally required. Saltzburg, 20 Am.Crim.L. Rev., *supra*, at 400.

*C. Analysis.* What is the test by which a court reviews a legislature's placing proof of a fact with criminal defendants? In *Patterson*, 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292, the Court merely acknowledged there were "obvious" constitutional limits to such practices. The only

limit mentioned was that a state could not place the burden of proof on *all* facts with defendants. *See id.* In *McMillan*, —— U.S. at ——, 106 S.Ct. at 2417, 91 L.Ed.2d at 76, the Court admitted "we have never attempted to define precisely the constitutional limits noted in *Patterson, i.e.,* the extent to which due process forbids the reallocation or reduction of burdens of proof in criminal cases. . . ." The most significant statement by the Court appears fifty years ago in *Morrison v. California*, 291 U.S. 82, 88–89, 54 S.Ct. 281, 284, 78 L.Ed. 664, 669 (1934), where it broadly concluded that

> within limits of reason and fairness the burden of proof may be . . . cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accusor without subjecting the accused to hardship or oppression.

(*1*). These statements provide little guidance in examining traditional burden-of-proof issues. The better reasoning of the various opinions in *McMillan, Patterson, Mullaney, Winship,* and *Leland* emphasizes due process protects against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *Cf.* Iowa Code § 701.3 ("No person shall be convicted of any offense unless the person's guilt . . . is proved beyond a reasonable doubt."). This principle "is the historical barrier to arbitrary deprivation of freedom in the criminal justice system." 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law* § 17.4, at 214 (1986). It implements the guarantee of Iowa Code section 701.3 that every person is presumed innocent until proven guilty.

What is a "fact necessary to constitute the crime charged"? The test should focus on the specific fact within the entire

scheme of the criminal law: if it is important enough for serious criminal consequences to turn on it, it is important enough to require proof beyond a reasonable doubt. *See* Underwood, 86 Yale L.J., *supra*, at 1329; *see also McMillan*, — U.S. at ——, 106 S.Ct. at 2421, 91 L.Ed.2d at 82 (Stevens, J., dissenting) ("if a state provides that a specific component of a prohibited transaction shall give rise both to a special stigma and to a special punishment, that component must be treated as a 'fact necessary to constitute the crime' "); *Patterson*, 432 U.S. at 226, 97 S.Ct. at 2335, 53 L.Ed.2d at 302 (Powell, J., dissenting) (due process requires a state "to bear the burden of persuasion beyond a reasonable doubt only if the factor at issue makes a substantial difference in punishment and stigma").

(*2*). There is no question in this case that intent was a fact necessary to constitute the crimes charged, and thus a persuasion burden of the State.[6] The issue is whether proof of insanity, a burden placed on the defendant under section 701.4, negated that intent.

The parties agree that insanity is a broader concept than lack of intent. For example, persons may feel compelled by god or devil to commit assault. They may admit committing every fact necessary to constitute assault, including intent, but at the same time they could raise an insanity defense on the basis of their delusion. In such cases it seems constitutionally permissible to require those persons to prove their insanity by a preponderance because that issue is *a separate one* from lack of intent. They hope to be adjudged insane and deemed not criminally responsible by reason of their mental disorder, despite their intent to commit the crime. Those circumstances, however, are not present in this case, where the defendant's evidence ap-

parently indicated he never intended to commit the crimes charged. Instead, he sought to prove his mental disorder prevented him from forming *any* intent to commit those crimes. His *capacity* was the issue, and therefore *any proof of insanity directly related to his intent*.[7]

In *Davis*, 160 U.S. at 484–85, 491, 16 S.Ct. at 357, 360, 40 L.Ed. at 504–505, the Court essentially equated proof of sanity with proof of intent. *See generally* 8A J. Moore, *Federal Practice* ¶ 30.11[5], at 30–116 (1986) ("sanity is an element of crimes requiring criminal intent"). In *State v. Thomas*, 219 N.W.2d at 5, this court relied on *Davis* in overruling our cases that required defendants to prove insanity by a preponderance of the evidence. We realized, however, that *Davis* ·implicitly suggested *any* mental disorder *necessarily* affects the capacity to form intent. *See Mullaney v. Wilbur*, 421 U.S. at 706, 95 S.Ct. at 1893, 44 L.Ed.2d at 524–25 (Rehnquist, J., concurring) ("[A]lthough ... evidence relevant to insanity ... may also be relevant to whether the required mens rea was present, the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of a crime."). Our holding was thus limited in its application:

> [T]he State must not only establish the *elements* of the crime but, when the defendant's *capacity* to commit the crime at all is drawn into question and substantial evidence appears in the record raising a fact issue under the M'Naghten test, the State must also establish the defendant's sanity.

*State v. Thomas*, 219 N.W.2d at 5.

Why did we choose to ignore *Leland* and require the State to prove defendants' sanity beyond a reasonable doubt? Primarily

---

**6.** Sexual abuse in the third degree is a general-intent crime with a maximum penalty of ten-years imprisonment and $10,000 fine; first-degree kidnapping is a specific-intent crime with mandatory life imprisonment; and assault with intent to commit sexual abuse is a specific-intent crime with a maximum penalty of five-

years imprisonment and $5,000 fine (if injury not serious). *See* Iowa Code §§ 709.4(1), 709.-11, 710.1, .2, 902.1, 902.9(3), (4).

**7.** The defendant concedes that on its face the statute is not unconstitutional; he maintains, however, that as applied it violates due process.

because the sole justification for the Court's decision in *Leland* was that at that time some twenty states required defendants to prove insanity by a preponderance. 343 U.S. at 798, 72 S.Ct. at 1007, 96 L.Ed. at 1308–309. Even assuming a box score has some value in determining whether a practice is constitutional, it is of little value where no consensus ever appears to have existed on the issue.

In addition, Justice Frankfurter's dissent in *Leland* stressed that

> from the time that the law which we have inherited has emerged from dark and barbaric times, the conception of justice which has dominated our criminal law has refused to put an accused at the hazard of punishment if he fails to remove every reasonable doubt of his innocence in the minds of jurors.

.    .    .    .    .

> [A] muscular contraction resulting in a homicide does not constitute murder [unless there is culpability].

.    .    .    .    .

> [W]hen a State has chosen its theory for testing culpability, it is a deprivation of life without due process to send a man to his doom if he cannot prove beyond a reasonable doubt that the physical elements of homicide did not constitute murder because under the State's theory he was incapable of acting culpably.

343 U.S. at 802, 804, 72 S.Ct. at 1009, 1010, 96 L.Ed. at 1311, 1312. His view formed the basis for the holding in *Winship* nearly

twenty years later that proof beyond a reasonable doubt was constitutionally required in all criminal cases. *Leland* has thus been "completely undermined." *State v. Buchanan*, 207 N.W.2d at 789–90 (McCormick, J., dissenting).

*D. Conclusion.* In this case the defendant's capacity for intent was drawn into question and there was no disagreement the record showed substantial evidence of a fact issue under the M'Naghten test.[8] When these circumstances arise the State must prove a defendant's sanity beyond a reasonable doubt. This is the holding of *State v. Thomas*, 219 N.W.2d at 5, which we should elevate to constitutional status.

The district court thus erred in its instructions because the defendant was essentially required to establish his innocence by proving he was not guilty of the crimes charged:

> How ... can a verdict of guilty be properly returned, if the jury entertains a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit the crime?

*Davis*, 160 U.S. at 488, 16 S.Ct. at 358, 40 L.Ed. at 506. Under the circumstances, section 701.4 effectively denied this defendant due process under our constitution.[9]

III. *Insanity: burden of production.*

Section 701.4 burdens defendants with producing evidence *and* persuading the trier of fact. I believe that defendants

---

8. While the connection between the defendant's mental disorder and the crimes charged was tenuous, the State never argued there was insufficient evidence on the defendant's insanity to preclude an instruction on that issue. *See State v. Watts*, 244 N.W.2d 586, 589 (Iowa 1976); *see also United States v. Torniero*, 570 F.Supp. 721, 733–34 (D.Conn.1983) (defendant must show incapacity directly bore on the commission of crime to introduce expert testimony).

9. In cases such as this one it is impossible for juries to reconcile instructions that defendants must prove insanity by a preponderance of the evidence with ones that the State must prove intent beyond a reasonable doubt. *See* Eule, 25 UCLA L.Rev., *supra*, at 667. The presence of "serious confusion ... seems inescapable."

*Stump*, 398 F.2d at 116 (alibi instructions). I cannot agree with the State's implication that any error in the instructions was harmless.

Apart from the burden-of-proof issue, the district court's instructions were erroneous in requiring the jury to determine whether the defendant had proven his insanity by a preponderance *first*, and whether the State had proven its case beyond a reasonable doubt *second*. Defendants can simply be not guilty for lacking intent, an element of most crimes. Under the court's instructions, a jury is prevented from finding a defendant not guilty on this basis if it determines insanity has been proven. Guilt is thus assumed. Error on these instructions, however, was not preserved.

should bear the burden of production on insanity when their capacity to form intent is drawn into question. This practice, to overcome the presumption of sanity, is consistent with the legislative intent in enacting section 701.4. *Cf.* Iowa Code § 4.12 (severability of statutes); *State v. Monroe,* 236 N.W.2d at 35 (a court should try to sustain "as much of a legislative enactment as possible"). No court has found it unconstitutional. Robinson, *Criminal Law Defenses, supra,* at 33.

We should reverse and remand.