# IN THE COURT OF APPEALS OF IOWA

No. 16-0705
Filed June 7, 2017

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**JODIE SHERMAN,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

A defendant appeals her conviction for murder in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**GOODHUE, Senior Judge.**

Jodie Marie Sherman appeals from the trial court's refusal to grant her motion for a new trial after a bench trial finding her guilty of second-degree murder. We affirm the decision of the district court.

## I. Background Facts and Proceedings

On July 4, 2014, Sherman and Douglas Richt were seated in Richt's car at 3501 5th Avenue in Council Bluffs. Neighbors in the area heard them arguing, and one testified that she saw Sherman punch the driver in the jaw with a backhanded motion. Sherman emerged from the car, cursing Richt in the process. Richt moved around a little bit in the car and then got out on the driver's side, holding his neck and yelling, "That bitch stabbed me." He staggered on the steps of a nearby home and collapsed. Richt died of a stab wound to the neck.

Sherman walked away from the car and was heard to say something about being kidnapped. John Carlson, a friend of Sherman's, was working on a car in the neighborhood and followed her as she walked down the street after the stabbing. He asked her why she did it, and she talked about being held against her will, being kidnapped, and somebody wanting to have sex with dead people. She finally told him to leave her alone. Later, a bloody knife with a twelve-inch blade was found in the car. The blood was tested and found to match Richt's. A 1.75 liter bottle labeled Peppermint Schnapps, with about two inches of clear liquid remaining, was found in the car. No tests were performed on the remaining liquid. Richt's body tested positive for amphetamines and methamphetamine.

Council Bluffs police arrived at the scene and observed Carlson following Sherman. Officer Miranda Adams got out of her car, displayed her weapon, and asked Sherman to stop and get on the ground with her arms spread out to her sides. Sherman complied. Sherman told Adams, "He kidnapped me," and wanted to know what she was going to do about it. Adams considered Sherman's bizarre behavior as a possible sign of intoxication, but neither she nor any other officer smelled the odor of an alcoholic beverage or performed any sobriety tests on Sherman. Another officer arrived, and Sherman was handcuffed. Before Adams could take Sherman to the station for interrogation, she slipped out of the handcuffs. Adams had to handcuff her again with a smaller set.

Sherman was taken to the police station and interviewed approximately one hour after Richt had been stabbed. She swore at the female officers who were attempting to remove her bloodstained clothing. They were having difficulty swabbing her hands, when Sherman logically advised them it would be easier if they removed her handcuffs. Sherman wanted to know from the officers why "you guys" were not getting those 911 calls, why 911 calls were being intercepted, and what had happened to the two towers. The interrogating officer, Mark Elonich, asked whether she was "talking about NYC." She replied, "No, here in Iowa." Officer Elonich thought she was intoxicated or under the influence of something. The interrogation was recorded but ended within a few minutes when Sherman requested an attorney. Sherman was charged with first-degree murder.

While in jail and soon after her arrest, Sherman heard voices, thought people could read her mind, and did not believe Richt was dead. Dr. Ivan Delgado, a psychiatrist, examined her and diagnosed her with schizophrenia. Dr. Cynthia Paul, a psychiatrist, examined her three times during the first fifteen days after her arrest and reviewed the videotape of Sherman's interrogation. Dr. Paul diagnosed Sherman with psychosis, not otherwise specified, which she described as a thought disorder characterized by prominent delusions and hallucinations. Sherman was found not to be competent to stand trial. She was sent to Oakdale for restoration of her competency by an order entered October 7, 2014. On November 22, 2014, a competency evaluation was completed at Oakdale by Dr. Tim Kockler, a licensed psychologist. He found Sherman suffering from substantial mental illness and appeared to meet the DSM-IV criteria for:

> Axis I: Bipolar 1 disorder, most recent episode, severe without psychosis, stable.
> Alcohol use disorder, in remission, in a controlled environment.
> Amphetamine use disorder, in remission, in a controlled environment.
> Axis II: Unspecified personality disorder.

Nevertheless, at that time, Sherman was found competent to stand trial and assist in her defense.

Sherman waived a jury and at trial did not contest the fact that she had stabbed Richt and he died as a result. Instead, she put forth a defense of insanity.

> A person shall not be convicted of a crime if at the time the crime is committed the person suffers from such a diseased or deranged condition of the mind as to render the person incapable of knowing the nature and quality of the act the person is

5

committing or incapable of distinguishing between right and wrong in relation to the act. Insanity need not exist for any specific length of time before or after the commission of the alleged criminal act. If the defense of insanity is raised, the defendant must prove by a preponderance of the evidence that the defendant at the time of the crime suffered from such a deranged condition of the mind as to render the defendant incapable of knowing the nature and quality of the act the defendant was committing or was incapable of distinguishing between right and wrong in relation to the act.

Iowa Code § 701.4 (2014); *see also State v. James*, 393 N.W.2d 465, 467-68 (Iowa 1986). The trial became a battle of the experts, who expressed conflicting opinions as to Sherman's sanity at the time of the stabbing.

Dr. Paul testified that Sherman did not know the nature and quality of her acts because of her delusion that she was being held hostage and also opined Sherman did not know right from wrong immediately after the stabbing based on her actions. Sherman had a long history of commitments for mental disorders and substance abuse problems, and also a criminal history that Dr. Paul reviewed. Sherman, when being interviewed, had stated that she did not remember what had happened at the time of the stabbing. This made it difficult for Dr. Paul to say definitely what delusion Sherman was suffering from that caused her to stab Richt.

Dr. Yancey Moore testified on behalf of the State. Dr. Moore reviewed Dr. Paul's opinions, the video of the interrogation, and other reports, and he interviewed Sherman. Dr. Moore agreed with Dr. Paul that the video of Sherman's interrogation after the stabbing incident verified that she was suffering from hallucinations at the time of the interview. Dr. Moore further testified that a person can suffer from a hallucination and still understand the quality of their

acts. Dr. Moore testified that he did not believe Sherman suffered from amnesia at the time of the incident.

The State also attempted to prove that Sherman was intoxicated at the time of the incident, but there was no proof of intoxication except for her bizarre behavior.

The trial court stated that it was not particularly persuaded by either expert's analysis and also was not persuaded Sherman was intoxicated in the absence of any proof except her behavior. The trial court questioned Sherman's purported lack of memory about the critical facts of the July 4 incident. The trial court noted she cursed the victim, and she could remember enough during the interrogation immediately after the incident to deny she took drugs the night before and state that, if she had been drinking, it was "hardly drinking." The court also observed Sherman told her friend who followed her after the incident to leave her alone, freed herself from the handcuffs, followed directions from the officers, and logically advised the officers how they could remove the blood from her hands more easily by removing the handcuffs. The trial court concluded:

> [H]er physical, volitional acts demonstrated that she was angry at Douglas, that she wanted to get away from the scene of the crime, and that she wanted to escape from handcuffs. These are the acts of a person who knew that her conduct in stabbing Douglas was wrong and would have consequences.

After hearing and weighing the evidence, the court concluded the State proved the elements of second-degree murder beyond a reasonable doubt but did not prove deliberation and premeditation, and it further concluded that Sherman did not prove her defense of insanity. Malice aforethought can be implied from the intentional use of a deadly and dangerous weapon. *State v.*

*Reeves*, 636 N.W.2d 22, 25 (Iowa 2001). The trial court accordingly returned a verdict finding her guilty of second-degree murder. Sherman filed a combined motion in arrest of judgment and a motion for new trial, but it was denied. Sherman has appealed from the denials.

## II. Error Preservation

Generally, a party must raise an issue and it must be ruled on by the trial court in order to preserve error. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Error has been preserved.

## III. Standard of Review

A motion in arrest of judgment raises sufficiency-of-the-evidence issues and is reviewed for correction of errors of law. *State v. Leckington*, 713 N.W.2d 208, 212-13 (Iowa 2006). When reviewing a motion in arrest of judgment, the evidence is reviewed in the light most favorable to the State. *Id.* A motion for a new trial places a greater burden on the State and requires that the verdict be reviewed by a weight-of-the-evidence standard. *State v. Ellis*, 578 N.W.2d 655, 656 (Iowa 1998). It requires the court to weigh the evidence and consider the credibility of the witnesses. *Id.* at 659. Trial courts have wide discretion in deciding motions for a new trial, but their discretion is to be exercised carefully and with caution, and only in exceptional cases should it be granted. *Id.*

The weight-of-the-evidence rule seems problematic when it is applied to a criminal case involving the affirmative defense of insanity. Except in very rare instances, the burden in a criminal proceeding is on the State. However, when the affirmative defense of insanity is the basis of an accused's defense, it turns the general rule of the burden on its head and puts the defendant in the difficult

position of proving his insanity by a preponderance of the evidence.  *See James*, 393 N.W.2d at 467.

Viewing the denial of the new trial ruling of the district court, we concur that Sherman simply did not prove her defense of insanity by a preponderance of the evidence, as required by statute.  It necessarily follows that the verdict was supported by substantial evidence.  The verdict of second-degree murder is supported by the weight of the evidence, and the trial court did not commit error by denying Sherman's request for a new trial.

We affirm the decision of the district court.

**AFFIRMED.**